[Crim. No. 5803. Second Dist., Div. Three. Apr. 8, 1957.]

THE PEOPLE, Respondent, v. JOHN KENNY FERRERA, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Bonnie Lee Hansen, Deputy Attorney General, for Respondent.

VALLÉE, J.—By information defendant was accused in Count I of bookmaking, in Count II of keeping and occupying a residence with bookmaking paraphernalia for the purpose of recording bets on horse races, in Count III of receiving money for the purpose of betting, and in Count IV of recording a bet. Defendant's motion to dismiss under Penal Code, section 995, was denied. On motion of the People Count III was dismissed. In a jury trial defendant was found guilty as charged in Counts I, II and IV. He was fined $500 and placed on probation. He appeals from the judgment and the order denying his motion for a new trial.

Prior to the filing of the information on which the convictions were had, a complaint was filed accusing defendant of the identical offenses charged in the present information. After a preliminary hearing on that complaint defendant was held to answer and an information filed accusing him of the offenses. On motion of defendant under Penal Code, section 995, that information was dismissed. No appeal was taken from that order. A second complaint was filed and dismissed by the magistrate, apparently because the People did not have their evidence in court. Thereafter a third complaint was filed, a preliminary hearing held at which defendant was held to answer, and the present information filed. Defendant's motion to dismiss under section 995 was denied.

Defendant contends the order granting the motion to dismiss the first information is a bar to the present prosecution for the same offenses. The point is without merit. Referring to the motion under section 995, Penal Code, section 997, reads:

''The motion must be heard at the time it is made, unless for cause the court postpones the hearing to another time. . . . If the motion is granted, the court must order that the defendant, if in custody, be discharged therefrom, or, if admitted to bail, that his bail be exonerated; or, if he has deposited money, or if money has been deposited by another

or others instead of bail for his appearance, that the same be refunded to him or to the person or persons found by the court to have deposited said money on behalf of said defendant, unless it directs that the case be resubmitted to the same or another grand jury, or that an information be filed by the district attorney; provided, that after such order of resubmission, the defendant may be examined before a magistrate, and discharged or committed by him, as in other cases, if before indictment or information filed he has not been examined and committed by a magistrate.''

Section 999 reads: ''An order to set aside an indictment or information, as provided in this chapter, is no bar to a future prosecution for the same offense.''

''There is nothing in the statute [section 997] that would forbid a re-examination where the court had failed to order it, or that can be construed to mean that a resubmission is essential to the validity of a second indictment or information. That an order setting aside an indictment or information is no bar to a future prosecution is plainly declared in section 999.'' (*People* v. *Breen,* 130 Cal. 72, 74 [62 P. 408].) The order dismissing the first information constituted no bar to the present prosecution. The magistrate had jurisdiction of the preliminary hearing on which the present information was based. ■ The fact that the People did not appeal from the order granting the motion to dismiss the first information furnishes no ground for complaint on the part of defendant. ■ No constitutional right of his is invaded by the present prosecution on a second information. (*People* v. *Godlewski,* 22 Cal.2d 677, 680-683 [140 P.2d 381]; *People* v. *Dawson,* 210 Cal. 366, 368-371 [292 P. 267]; *In re Begerow,* 136 Cal. 293, 299-300 [68 P. 773, 56 L.R.A. 528]; *Patterson* v. *Police Judge's Court,* 123 Cal. 453, 455 [56 P. 105]; *People* v. *Vacca,* 132 Cal.App.2d 8, 9 [281 P.2d 315].)

■ It is argued that the order granting the motion to dismiss the first information is res judicata under section 1908 of the Code of Civil Procedure.[1] The point is not

---

[1]Code of Civil Procedure, section 1908: ''The effect of a judgment or final order in an action or special proceeding before a court or judge of this state, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows:

''1. In case of a judgment or order against a specific thing, or in respect to the probate of a will, or the administration of the estate of a decedent, or in respect to the personal, political, or legal condition or relation of a particular person, the judgment or order is conclusive

tenable. "The distinction between civil and criminal actions is fundamental: a separate branch of the law covers crimes, jurisdiction of courts over criminal proceedings, and criminal procedure." (1 Witkin, California Procedure, 494, § 9.)

██ The distinct character of civil and criminal proceedings necessarily precludes any general application of the doctrine of res judicata to successive criminal proceedings. (3 Witkin, California Procedure, 1942, § 58.) Quoting from *Ex parte Clarke*, 54 Cal. 412, the court in *In re Begerow*, 136 Cal. 293 [68 P. 773, 56 L.R.A. 528], speaking of a dismissal for failure to bring a criminal prosecution to trial within 60 days, said (p. 297):

" 'But the order dismissing the prosecution ends the action commenced by the complaint upon which the magistrate issued his warrant of arrest. It ends the action, however, not by any judgment upon the merits of the case, but by an order in the nature of a judgment of nonsuit, a simple expression of the opinion of the court that that particular proceeding ought not to be further prosecuted. Inasmuch as there is no limitation of time applicable to prosecutions for murder, and as a defendant in whose favor an order of dismissal of the action has been made has never been put in jeopardy within the meaning of the constitution, a new action on behalf of the people may in such case be initiated at any subsequent day, either by presentment of a grand jury or by a complaint filed with any magistrate.' "
(Also see Pen. Code, § 1387; *People* v. *Head,* 105 Cal.App. 331 [288 P. 106]; *People* v. *Romero,* 13 Cal.App.2d 667 [57 P.2d 557]; *People* v. *MacCagnan,* 129 Cal.App.2d 100 [276 P.2d 679].) ██ Section 999 of the Penal Code, not section 1908 of the Code of Civil Procedure, controls. Cases in which the defendant was convicted or acquitted after a trial on the merits are not analogous. (See *People* v. *Beltran,* 94 Cal. App.2d 197 [210 P.2d 238]; 26 S. Bar J. 366.) The order dismissing the first information is not res judicata.

██ On February 4, 1956, Officer Latimer, a deputy sheriff, was told by an anonymous informer that bookmaking

---

upon the title to the thing, the will, or administration, or the condition or relation of the person.

"2. In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding."

was going on in Montebello and that the telephone number was RA 3-8013. He was told "Ed" was the name to use in telephoning bets. A special agent of the telephone company gave Latimer the address at which the number RA 3-8013 was located at 730½ South Garfield in Montebello and told him the address was described as that of Raymond Rogers.

Latimer and Deputy Sheriff Earl then went to South Garfield and found a long row of apartment houses. They asked the manager if Raymond Rogers lived at 730½. They were told he did. Latimer and Earl then met two other deputies and had a conversation with them. During that time no one entered or left 730½. Latimer went to a public telephone about two or three blocks from 730½ and dialed RA 3-8013. A male voice answered and Latimer said "This is Bill for Ed." The voice responded, "O.K." Latimer then said, "I would like to bet the second, Jay Frost, two to win, two to place. In the fourth, Count Lathey, one dollar to win, one dollar to place, one dollar to show. . . . The first, Ray Jewel parlay to the second Jay Frost, four dollars to win, four dollars to place. The seventh, Island Queen, one dollar to win, one dollar to place, one dollar to show. The eighth, Pay Section, three dollars to win and three dollars to place." The male voice then stated, "Is that all?" and "O.K." These were purported bets on horses running at Santa Anita that day.

Latimer and Earl, who was with him, drove back to 730½ and met the two other deputies. During the time Latimer placed the telephone call the two other deputies sat in an automobile in front of 730½ and kept the premises under observation constantly. No one entered or left from the time Latimer left until he returned.

Latimer then went to the front door of 730½, knocked, and said in a loud voice, "This is Deputy Sheriff, you're under arrest for suspicion of bookmaking. Open the front door." There was no response for about 10 or 15 seconds. Latimer knocked and identified himself again. At that time he heard scuffing of feet which sounded like someone running. Latimer then kicked the door open. As he and the other officers entered, defendant was about three or four feet from him, running to the rear of the apartment. There was no one else in the apartment. Latimer told defendant he was under arrest for suspicion of bookmaking. A search of the premises was then made. A telephone was on the kitchen table. The number was RA 3-8013. The officers found numerous betting markers;

two National Daily Reporters, one dated February 4, 1956; small pieces of paper with writing upon them; pencils; paper; an adding machine; and one or two newspapers. Two hundred and some odd dollars were found with betting markers in a wine-holder case. One betting marker was on top of others. On the right hand corner of that one appeared the name "Bill," and on the upper left-hand corner the name "Ed." Writings on this marker corresponded with the bets made by Latimer over the telephone. Defendant stated this and other betting markers were in his handwriting.

Defendant told Latimer he was using the apartment of a friend of his; he had been coming there for several weeks making book; he took in about $500 a day; all the betting markers were in his handwriting; the two hundred and some odd dollars was his payoff money; he used the adding machine to total his action; the writing on the National Daily Reporter was his; he drew red marks through the horses shown on the Reporter because they had been scratched.

During the time the officers were in the apartment the telephone rang 15 to 20 times. The first time Latimer answered and a male voice said, "This is Ted for Ed," and made a bet on horses running that day at Santa Anita. The arrest and the search which followed were made without a warrant.

Defendant urges that the evidence was insufficient to show probable cause for the search and seizure. The point is based on the fallacious assumption that the arrest was based solely on the information received from the anonymous informer and "upon nothing else." Such information was not the sole basis for the arrest. Officer Latimer obtained defendant's telephone number from the informer. He obtained the address at which that telephone was located from an agent of the telephone company. He telephoned that number, using a name given him by the informer. A male voice answered. Latimer placed bets by giving the names of horses, track, and post positions. The male voice stated, "Is that all?" and "O. K." No one entered or left the apartment in which the telephone was located from the time Latimer left to place the call until he knocked on the door. When he knocked on the door, identified himself, and told the person inside he was under arrest, there was no response—there was a sound as if someone was running away. The evidence showed "such a state of facts as would lead a man of ordinary caution or prudence to be-

lieve, and conscientiously entertain'' strong suspicion that the apartment was being maintained as a bookmaking establishment—reasonable or probable cause. (*People* v. *Novell,* 54 Cal.App.2d 621, 623 [129 P.2d 453].) The officers had reasonable grounds for forcible entry of the premises after demand for admittance without a response when they knew the premises were occupied. (*People* v. *Miller,* 143 Cal.App.2d 558 [299 P.2d 1010]; *People* v. *Anderson,* 145 Cal.App.2d 201, 204-205 [302 P.2d 358]; *People* v. *Moore,* 141 Cal.App.2d 87 [296 P.2d 91].) The arrest was lawful. ■ A search without a warrant is valid where it is an incident to a lawful arrest, if it is reasonable and made in good faith; and a seizure during such a search related to the offense is lawful. (*People* v. *Winston,* 46 Cal.2d 151, 161-163 [293 P.2d 40].) ■ The evidence was sufficient to show probable cause for the arrest and the search and seizure.

It is asserted the evidence is insufficient to support the verdicts. The point is so manifestly without merit as not to require discussion.

The judgment and the order denying a new trial are affirmed.

Shinn, P. J., concurred

Wood (Parker), J., concurred in the judgment.

Appellant's petition for a hearing by the Supreme Court was denied June 4, 1957.