GOLDSTEIN, P. J.
Throughout this opinion we variously designate the appellant as the plaintiff and appellant, and the respondent as the defendant and respondent.
The Facts
On November 28, 1967, a complaint was filed in the municipal court charging the defendant with grand theft (violation of § 487, Pen. Code). The complaint alleged that between on or about December 15, 1965, January 15, 1966 and June 15, 1966, the defendant unlawfully took the property of the County of Fresno consisting of cash in excess of $200.
It appears from the settled statement on appeal that the defendant was twice charged with grand theft involving the receipt of welfare funds. The first complaint was filed against her on July 11, 1967. A preliminary hearing was held on that complaint before Honorable George A. Hopper. After hearing the evidence, he found it insufficient to prove the commission of the felony charged against the defendant and ordered the dismissal of the complaint. The district attorney appealed. However, the appeal was dismissed because it was filed after the expiration of the time within which an appeal could have been taken.
Thereafter, a second criminal complaint charging the defendant with grand theft (the one now before us) was filed on November 28, 1967. A preliminary hearing was again held before Honorable George A. Hopper. At the hearing a stipulation was entered into between counsel consenting that the matter be submitted for decision on the basis of the transcript . of the evidence at the first preliminary hearing.
On December 15, 1967, Judge Hopper, adhering to his former ruling, dismissed the complaint because of the insufficiency of the evidence. This appeal followed.
The evidence showed that the defendant had received payments of welfare funds from the County of Fresno at times when she had failed to report either the earnings or the presence in her home of a man assuming the role of her spouse. The district attorney contended that this constituted a theft of county funds alleging that it arose from her fraudulent misrepresentations and concealments relating to the presence of this individual in her home. The total amount involved in *982 the alleged overpayments was sufficiently large to bring the alleged offense within the grand theft statute (§ 487, Pen. Code).
The trial court held, however, that assuming all the evidence in the transcript to be true, the offense constituted nothing more than a misdemeanor and that the complaint alleging a felony was not sustained by the evidence. In deciding the case, the court stated the reasons for its ruling and, with commendable candor, expressed its doubt as to the correctness of its decision. It also pointed out the far-reaching effect of its action on the future prosecution of welfare fraud cases. It suggested that the matter be reviewed on appeal before an appellate court.
Judge Hopper held that the Welfare and Institutions Code was a special statute containing a complete and exclusive plan (and having a similar purpose) for the administration and enforcement of the welfare laws, as well as for the punishment of any violations of those laws. He pointed out that the only offense prescribed in the welfare laws was a misdemeanor. He held that the unlawful receipt of welfare payments obtained by means of fraudulent representations or concealment was included within the provisions of the welfare statutes and also came within the spirit and purpose of the welfare laws. He, therefore, held that any violation of the welfare laws, including the receipt of overpayments through fraud and misrepresentation was subject only to punishment as a misdemeanor. His ruling was based upon the well-recognized rule that in cases where a special statute prescribes the punishment for its violation, offenders must be prosecuted under the special statute and are not subject to prosecution under the general laws, provided that the acts committed are the same or similar in both cases.
This rule was stated as follows in In re Williamson, 43 Cal.2d 651 [276 P.2d 593] : “ ‘It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. . . ” (P. 654.)
The same rule was stated in somewhat different language in People v. Swann, 213 Cal.App.2d 447 [28 Cal.Rptr. 830], as follows: “We believe the People do not have the power to prosecute under the general felony statute in a ease such as this where the facts of the alleged offense parallel the acts proscribed by a specific statute. . . (P.449.)
*983 We have concluded, however, that the provisions of the Welfare and Institutions Code relating to welfare frauds do not have the extensive, broad and all-embracing effect attributed to them by the trial court.
It is our opinion that the penal provisions in the welfare statutes here under consideration relate solely to fraudulent representations, fraudulent concealment, and attempts to obtain aid by means thereof, and have no application to prosecutions arising from the receipt and retention of unauthorized welfare funds obtained by false pretenses. We further believe that the Legislature did not intend to provide punishment for offenders who profited by the fruits of their deception, but on the contrary, that the purpose of the welfare penal statutes was to prevent and discourage false applications or statements by welfare recipients. In cases where monies have been unlawfully received as a result of false pretense, fraud or concealment, it is our opinion that the general law (in this case § 487, Pen. Code), not the welfare statutes, should be applied. Hereinafter we state the reasons for our views.
The two sections of the Welfare and Institutions Code which are relied upon by the defendant and are referred to in the opinion of the trial court are respectively sections 11482 and 11265. We consider them in that order.
Section 11482 of the code provides as follows: “Any person other than a needy child, who willfully and knowingly, with the intent to deceive, make a false statement or representation or knowingly fails to disclose a material fact to obtain aid, or who, knowing he is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he is not entitled, or a larger amount than that to which he is legally entitled, is guilty of a misdemeanor. ’ ’
We construe the foregoing section to designate as a misdemeanor the following:
1. Willfully and knowingly, with the intent to deceive either (a) making a false statement in connection with an application for welfare aid, or (b) failing to disclose a material fact in connection with such application.
2. Attempting (a) to obtain aid, or (b) to continue to receive aid, by one who knows that he is not entitled to such aid.
No reference appears in the statute to the actual receipt or acceptance of aid resulting from the acts prohibited thereby. The misdemeanor designated in the statute is committed in its entirety by the making of a fraudulent representation, con *984 cealment or an attempt to obtain aid to which one is not entitled. Success or failure by the wrongdoer in obtaining aid is not the test of guilt. We believe that the obvious purpose of the statute was to discourage welfare recipients from committing any of the acts of deception condemned by the statute and that it goes no further.
The other section relied on by the lower court is section 11265 of the Welfare and Institutions Code. It requires the county to make annual redeterminations of the eligibility of' welfare recipients to continue to receive aid. They are required to furnish information relating to the number of their children, the names and status of adults residing in their home, and outside income received by them from employment or otherwise. If within 10 days, after the recipients have been supplied with appropriate forms for the furnishing of such information, they fail to furnish the information, the county may withhold the payment of further aid.
The penal provision of the foregoing section reads as follows: “Any person signing such certificate who willfully states therein any material matter which he knows to be false is guilty of a misdemeanor. ’ ’
Sections 11482 and 11265, supra, have many similar provisions. In each case, the offense is punishable only as a misdemeanor. The misdemeanor results from the supplying of false information to the welfare department or the withholding of a material fact. Violations of both sections subject the offender to equal punishment.
In construing the foregoing statutes, we are bound by the provisions of section 1858, Code of Civil Procedure which states: “In the construction of a statute or instrument, the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.”
In McGill v. City & County of San Francisco, 231 Cal.App.2d 35 [41 Cal.Rptr. 568], this function is described as follows : “. . . The judicial function is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. (Code Civ. Proc., § 1858.) ”
In Wisdom v. Eagle Star Ins. Co., 211 Cal.App.2d 602 [27 Cal.Rptr. 599], a policy issued under certain provisions of the Vehicle Code insured the operator of a vehicle not owned by *985 “him” against liability for injury or damage. The question was whether his son was also an insured under the policy. The court, frankly, recognized that the basic purpose of the financial responsibility law is to protect persons using our highways. Nevertheless, it held that the word “him” appearing in the statute referred only to the named insured under the policy and did not include his son. The court stated the principle as follows: “. . . We recognize that the purpose of financial responsibility laws is to give monetary protection to the persons lawfully using the highways, and that they are to be construed liberally. (Continental Cas. Co. v. Phoenix Constr. Co., 46 Cal.2d 423, 434, 435 [296 P.2d 801, 57 A.L.R, 2d 914] ; American Auto. Ins. Co. v. Transport Indem. Co., 200 Cal.App.2d 543 [19 Cal.Rptr. 558].) This proposition, however, does not vitiate the elementary principle that the judicial function is simply to ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted, or omit what has been inserted. (Code Civ. Proc., § 1858.) Courts cannot depart from the meaning of language in a statute which is free from ambiguity, even though the consequences would be to defeat the object of the statute. . . .” (P.605.) (Italics added.)
In Pacific Gas & Elec. Co. v. Shasta Dam etc. Dist., 135 Cal.App.2d 463 [287 P.2d 841], the court succinctly stated the rule to be; “. . . we believe that the better and more modern rule of construction is to construe a legislative enactment in accordance with the ordinary meaning of the language used and to assume that the Legislature lmew what it was saying and meant what it said. ” (P. 468.)
The power of this court is limited to a construction of statutes enacted by the Legislature. The power of amendment rests, not with the court, but with the Legislature. The welfare statutes are not exceptions to this rule. We cannot, as a court, by implication or otherwise, extend the sections under consideration to include offenses not defined therein.
We are also of the opinion that the provisions of section 11482 of the Welfare and Institutions Code are not exclusive and do not prevent the district attorney from employing remedies other than those contained in that section. There is a specific reservation in the Welfare and Institutions Code of the use of remedies other than those specifically provided therein. Section 11485 of that code provides in part as follows : " The enforcement remedies provided the district attorney under this article shall not preclude the use of any other *986 remedy which he has under the law to enforce this article.”
Both sections 11482, supra (the misdemeanor section) and 11485, supra (the reservation section) are included in division 9, part 3, article 6 of the Welfare and Institutions Code. The obvious meaning of section 11485, supra, is to give additional authority to the district attorney to employ any remedies for the enforcement of the welfare laws contained in the foregoing portion of the code which he deems advisable and effective in obtaining compliance with those laws.
It is true that section 11265, supra, (which is also partially relied upon by the defendant) is not included in the foregoing division, part and article. However, it is not necessary to rely upon the reservation of remedies in connection with that section. This becomes apparent because of the obvious limited purpose of section 11265, supra. By its very terms, the section is limited to punishment of one who signs a certificate to continue to receive aid and states therein any matter which he knows to be false. No reference is made therein to the obtaining or failure to obtain aid resulting from such conduct.
In his brief, defendant’s counsel urges in support of his interpretation of the welfare laws their humane and altruistic purposes. He contends that the Legislature intended to treat welfare recipients as a special favored group who should not be punished for their thefts of money in the same manner as others similarly situated. His argument seems to stem from the philosophy that the Legislature intended to be more lenient with such offenders because of their disadvantaged and deprived status. He cites in support of his contentions various sections of the welfare statutes, among them those that declare its purpose to insure them the maximum benefits permitted by law. We have no quarrel with the avowed purposes of the statute. However, whether or not a person is entitled to receive welfare or the amount of welfare which such person should receive is not before us. The argument, therefore, misses the mark. Theft committed by any individual, whether he be rich or poor, fortunate or unfortunate, deprived or affluent is nonetheless theft. In each case, the violation of the criminal laws is identical. The Legislature has the right to provide different punishments for different offenses. So far as we have been able to ascertain, however it has never distinguished between offenders on the basis of their economic status. The concept urged by the defendant, moreover, flouts the fundamental principle of ‘ ‘ equal justice under law. ’ ’
The construction placed by this court on the welfare statutes has a practical application. The construction urged *987 by the defendant would actually encourage, rather than discourage deception and falsity in obtaining welfare aid. If the offender could be prosecuted only for a misdemeanor, irrespective of either the extent of unauthorized aid received by him or his refusal to take advantage of his false representations, he would have nothing to lose by reaping the benefits thereof. In all of these instances, he would be subject to equal punishment. This could lead to widespread misuse of county funds in welfare cases, and would encourage, rather than deter one who made a false representation to reap the benefits thereof. The failure to differentiate between the gravity of the offenses involved violates our sense of justice, as well as the century-old maxim that the “punishment should fit the crime. ’ ’
The court has researched the cases relating to prosecutions for theft of welfare funds by false pretenses or fraud. In not a single case, have the appellate courts adopted the construction urged by the defendant in this case. Some individuals have been prosecuted for grand theft, others for petty theft. Many of the cases contained facts closely resembling or paralleling those involved in the instant case. People v. Bailey (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39] was a case which is on all fours with the case at bar. There, as here, it was alleged that a man holding himself out to be the spouse of the mother involved was living within her household. She received aid for her children. She failed to disclose either his income or his presence in the home. The period covered by the fraudulently obtained aid was from June 1956 to December 1957. The conviction was affirmed.
The court in that case also discussed another question which is pertinent to the case at bar. There none of the individual illegal payments exceeded $200. The total, however, was far in excess of the sum. The court there held that under the circumstances there present, the crime constituted grand theft, rather than petty theft and that the receipt of monies could be cumulated. The basis for its decision is stated as follows: “Several recent cases involving theft by false pretense have held that where as part of a single plan a defendant makes false representations and receives various sums from the victim the receipts may be cumulated to constitute but one offense of grand theft.” (Citing cases.) (P. 518.) Further: “. . . The test applied in these cases in determining if there were separate offenses or one offense is whether the evidence discloses one general intent or separate and distinct *988 intents. The same rule has been followed in larceny and embezzlement eases, and it has been held that where a number of takings, each less than $200 but aggregating more than that sum, are all motivated by one intention, one general impulse, and one plan, the offense is grand theft. (Citing cases.) ” (P. 519.)
Of necessity, each case must rest upon its own facts. However, in the opinion of the trial judge, he stated, ‘ ‘ There is no substantial question that the amount involved constitutes grand theft as opposed to petty theft.” (Citing People v. Bailey, supra, et al.) It is obvious, therefore, that he found that the receipts should be cumulated and when so cumulated, they could support a prosecution for grand theft.
The judgment discharging the defendant and refusing to hold the defendant to answer for the felony charge alleged in the complaint on the ground of the insufficiency of the evidence is reversed, with the instructions to the municipal court to reconsider the evidence presented to that court in the light of the views herein expressed.
Thompson, J., and Meyers, J., concurred.