[Crim. No. 16326. In Bank. July 2, 1973.]

THE PEOPLE, Plaintiff and Appellant, v
STEPHEN F. UHLEMANN, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, Joseph P. Busch, District Attorney, Harry Wood, Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

Hollopeter & Terry and Don H. Terry for Defendant and Respondent.

Richard S. Buckley, Public Defender (Los Angeles), James L. McCormick, Richard A. Curtis and Dennis A. Fischer, Deputy Public Defenders, and Sheldon Portman, Public Defender (Santa Clara), as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**BURKE, J.—** ■ It has long been the rule in this state that a magistrate's dismissal of criminal charges following a preliminary examination does not bar the People from either refiling the same charges before another magistrate or seeking an indictment based upon those charges. (See *Ex parte Fenton,* 77 Cal. 183, 184 [19 P. 267]; *People* v. *Prewitt,* 52 Cal.2d 330, 340 [341 P.2d 1].) In this case, defendant urges us to adopt an exception to that long-standing rule in cases wherein the magistrate's dismissal was based upon his factual finding that the defendant was innocent of all charges. As will appear, however, we have concluded that the magistrate lacks the power to make a finding regarding the guilt or innocence of the accused, for the magistrate's authority is limited to determining whether sufficient or probable cause exists to hold the defendant for trial. Accordingly, as the magistrate has no power to make a determination on the merits of the case before him, there is no room for the application of the doctrines of res judicata or collateral estoppel.

Defendant was arrested and charged with selling marijuana (Health & Saf. Code, § 11531). Following an extensive preliminary examination, the magistrate dismissed the complaint upon defendant's motion on the ground that the evidence established that defendant had been entrapped into committing the offense charged. The People thereupon obtained a grand jury indictment which charged defendant with the same offense. A jury trial was held and defendant was found guilty of one count, and not guilty of another. Defendant moved for a new trial based upon the newly filed opinion by this court of *Jones* v. *Superior Court,* 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241]. The court granted defendant's motion for a new trial and

thereupon ordered the action dismissed on the basis of our *Jones* decision.[1] The People appeal. (Pen. Code, § 1238, subds. (3) and (8).)

As noted above, the magistrate's ruling which dismissed the original charges against defendant followed an extensive preliminary examination, encompassing several days of testimony by both defense and prosecution witnesses. In essence, defendant's sole defense was entrapment. Defendant admitted making or arranging a sale or sales of marijuana to an undercover agent, but insisted that the idea to carry out those transactions originated with Cathrine Wolf, a friend and neighbor, who had been secretly working with police officers to expose narcotics offenders. The evidence indicated that Miss Wolf's cooperation with the officers had resulted in the arrest of several persons, including her former fiancé. Miss Wolf herself had been arrested for possession of marijuana immediately prior to joining forces with the police. At the preliminary examination, Miss Wolf denied that she had urged defendant to arrange narcotics sales, admitted that she had been a prior marijuana user, and testified in essence that she chose to cooperate with police officers through a desire to perform a public service, rather than through any promise or hope of leniency.

At the conclusion of the preliminary examination, the magistrate acknowledged that a conflict in the evidence existed with respect to the issue of entrapment, and that he had resolved that conflict in defendant's favor, based upon his determination that Miss Wolf was lying, and had "set up" defendant. The magistrate found it "inherently incredible" and "unbelievable" that a narcotics user such as Miss Wolf would, out of desire to perform a public service, arrange for the arrest of her friends and former fiancé. The magistrate evidently believed that Miss Wolf's hope of extricating herself from pending criminal charges led her to cooperate with police officers and, as proof of her worth to them, entrap defendant and others into making unlawful narcotics transactions.[2]

Following the magistrate's dismissal of the complaint, the People sought and obtained a grand jury indictment concededly based upon the same transactions as those upon which the dismissed complaint was based. The question arises whether the People were barred by the magistrate's dismissal from initiating such additional proceedings. We conclude they were not so barred.

---

[1]The People do not contend that the superior court had no jurisdiction to make the above orders, or that defendant waived his right to object to the instant proceedings by not first moving to set aside the indictment.

[2]It is well established that entrapment exists only if the criminal intent to commit the offense did not originate in the mind of the accused. (See *People* v. *Benford,* 53 Cal.2d 1 [345 P.2d 928]; *People* v. *Moran,* 1 Cal.3d 755, 760 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Farley,* 19 Cal.App.3d 215, 224 [96 Cal.Rptr. 478].)

It is, of course, the rule in this state that the magistrate's order dismissing a felony complaint is not a bar to another prosecution for the same offense, either by filing a subsequent complaint (*People* v. *Godlewski,* 22 Cal.2d 677, 682-683 [140 P.2d 381]; *Ex parte Fenton, supra,* 77 Cal. 183; *People* v. *Nooner,* 205 Cal.App.2d 723, 726 [23 Cal.Rptr. 355]; *People* v. *Brown,* 200 Cal.App.2d 111, 117 [19 Cal.Rptr. 36]; *People* v. *White,* 180 Cal.App.2d 99, 103 [4 Cal.Rptr. 261]; *People* v. *Ferrera,* 149 Cal.App.2d 850, 852-853 [309 P.2d 533]), or by seeking a grand jury indictment (*People* v. *Combes,* 56 Cal.2d 135, 145 [14 Cal. Rptr. 4, 363 P.2d 4]; *People* v. *Prewitt, supra,* 52 Cal.2d 330, 340; *People* v. *Joseph,* 153 Cal.App.2d 548, 551-552 [314 P.2d 1004]; *People* v. *MacCagnan,* 129 Cal.App.2d 100, 112-113 [276 P.2d 679]). ■ Even a dismissal in the superior court following an order setting aside an information or indictment is no bar to a future prosecution for the same offense. (*People* v. *Van Eyk,* 56 Cal.2d 471, 477 [15 Cal.Rptr. 150, 364 P.2d 326]; Pen. Code, § 999; see also § 1387.)

It appears, however, that none of the foregoing cases involved a dismissal based upon the magistrate's factual determination that defendant did not commit an offense. Instead, the cases have upheld subsequent prosecutions following dismissals ordered for such reasons as insufficiency of the evidence (*People* v. *Hrjak,* 85 Cal.App. 301, 303-304 [259 P. 353]), lack of probable cause to commit (*People* v. *Joseph, supra,* 153 Cal.App.2d 548, 551-552), delay in prosecution (*People* v. *Godlewski, supra,* 22 Cal.2d 677, 682-683), failure to exclude unauthorized persons from the courtroom (*People* v. *Brown, supra,* 200 Cal.App.2d 111, 117), and furtherance of justice (*People* v. *MacCagnan, supra,* 129 Cal.App.2d 100, 112-113). In none of the cases did the dismissing magistrate act upon the express determination, based upon the evidence presented to him, that defendant did not commit the crime charged or had proved an absolute defense thereto.

In the instant case, on the other hand, the magistrate held a preliminary examination, disbelieved a key prosecution witness, and on the basis of that disbelief (coupled with his evident belief of defendant's testimony) determined that defendant had been entrapped. Thus, according to defendant, that determination should be distinguished from the ordinary finding of insufficiency of the evidence or lack of probable cause, for it constituted a decision on the merits of the People's case, a decision which assertedly should bar a subsequent prosecution for the same offense.

Defendant's assumption, that the magistrate's dismissal constituted a valid determination on the merits of the charges against him, is based

upon the premise that the magistrate had authority or jurisdiction to make such a determination. To the contrary, the magistrate's role is limited by statute to determining whether or not there is "sufficient cause" to believe defendant guilty of a public offense. (See Pen. Code, §§ 871, 872.) The term "sufficient cause" is generally equivalent to "reasonable and probable cause," that is, such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*Williams* v. *Superior Court,* 71 Cal.2d 1144, 1147 [80 Cal.Rptr. 747, 81 Cal.Rptr. 761, 458 P.2d 987].)

■   As we recently pointed out in *Taylor* v. *Superior Court,* 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131], "Of course, the probable cause test is not identical with the test which controls a jury . . . . The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information and of every essential element of that crime. But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, 'Evidence that will justify a prosecution need not be sufficient to support a conviction. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]' "

■   Within the framework of his limited role,[3] however, the magistrate may weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses (*Jones* v. *Superior Court, supra,* 4 Cal.3d 660, 667). In other words, in assisting him in his determination of "sufficient cause," the magistrate is entitled to perform adjudicatory functions akin to the functions of a trial judge. Yet the proceeding is not a trial, and if the magistrate forms a personal opinion regarding the guilt or innocence of the accused, that opinion is of no legal significance whatever in view of the limited nature of the proceedings.

Thus, prior California cases have stated that the doctrines of res judicata or collateral estoppel are inapplicable to orders dismissing criminal pro-

---

[3]For additional authorities acknowledging the limited authority of magistrates, see *People* v. *Brite,* 9 Cal.2d 666, 684-685 [72 P.2d 122]; *People* v. *Cohen,* 118 Cal. 74 [50 P. 20]; *People* v. *Superior Court (Scofield),* 249 Cal.App.2d 727, 735 [57 Cal.Rptr. 818]; *People* v. *Newton,* 222 Cal.App.2d 187, 189 [34 Cal.Rptr. 888]; but see *Esteybar* v. *Municipal Court,* 5 Cal.3d 119, 126-127 [95 Cal.Rptr. 524, 485 P.2d 1140] [in determining existence of "sufficient cause," magistrate performs judicial functions]; Model Penal Code of Prearraignment Procedure, Tent. Draft No. 5 (1972) §§ 330.5, subd. (3), 330.7.)

ceedings following preliminary hearings. (See *People* v. *Prewitt, supra,* 52 Cal.2d 330, 339-340; *In re Begerow,* 136 Cal. 293, 297 [68 P. 773]; *Ex parte Clarke,* 54 Cal. 412, *People* v. *Hernandez,* 250 Cal.App.2d 842, 848 [58 Cal.Rptr. 835]; *People* v. *Joseph, supra,* 153 Cal.App.2d 548, 550-551; *People* v. *Ferrera, supra,* 149 Cal.App.2d 850, 853; 1 Witkin, Cal. Crimes, §§ 224, 225, pp. 214-215.)[4]

Moreover, there would appear to be sound practical reasons for declining to extend the traditional role of the magistrate at preliminary hearings. Since a magistrate need not be a member of the bar to qualify for his position (see Pen. Code, § 808, subd. 5; Gov. Code, § 71601) there is some basis for reluctance to empower him with the authority to terminate forever proceedings against one accused of a criminal offense. Even assuming that the People might appeal from an adverse decision by the magistrate,[5] nevertheless the magistrate's factual findings would remain unreviewable for all practical purposes (see *De Mond* v. *Superior Court,* 57 Cal.2d 340, 345 [19 Cal.Rptr. 313, 368 P.2d 865]), especially in view of the magistrate's authority to weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses (*Jones* v. *Superior Court, supra,* 4 Cal.3d 660, 667).

Defendant contends, however, that the rationale of *Jones* v. *Superior Court, supra,* 4 Cal.3d 660, would support the application of res judicata

---

[4]"The doctrine of res judicata prevents the relitigation of issues determined by a final judgment in a prior action between the same parties or those in privity with the original parties." (*In re Crow,* 4 Cal.3d 613, 623, fn. omitted [94 Cal.Rptr. 254, 483 P.2d 1206].) The doctrine of collateral estoppel bars relitigation of previously decided issues sought to be raised in a new proceeding on a different cause of action. (*Id.,* p. 622; 1 Witkin, *supra,* § 221 et seq., and cases cited; see *Ashe* v. *Swenson,* 397 U.S. 436, 445 [25 L.Ed.2d 469, 476, 90 S.Ct. 1189].) In criminal cases, these doctrines have thus far been limited to situations wherein jeopardy has attached at the prior proceeding. As stated in *Crow,* (p. 623), "In criminal cases in which an individual has once been haled before a jury and found innocent, res judicata, including collateral estoppel, rests upon the double jeopardy clause of the Fifth Amendment and prevents a second prosecution for the same conduct or subject matter. (*Ashe* v. *Swenson* (1970) [*supra*] 397 U.S. 436, 445 . . . .)" Since a defendant is not placed in jeopardy at the preliminary hearing (*United States* v. *Levy,* 268 U.S. 390, 393 [69 L.Ed. 1010, 1011, 45 S.Ct. 516]; *Ex parte Fenton, supra,* 77 Cal. 183, 184; 1 Witkin, *supra,* § 189, p. 182), the Fifth Amendment does not serve as a proper basis for barring further prosecution in this case.

[5](See Pen. Code, § 1466, subd. 1(a); 1 Cal. Criminal Law Practice (Cont. Ed.Bar 1964) § 6.5, p. 237; Witkin, Cal. Criminal Procedure, § 659, pp. 650-651; *People* v. *Lopez,* 265 Cal.App.2d Supp. 980 [71 Cal.Rptr. 667]; but see *People* v. *Joseph, supra,* 153 Cal.App.2d 548, 551; Graham & Letwin, *The Preliminary Hearing in Los Angeles: Some Field Findings and Legal-Policy Observations, Part I,* 18 U.C.L.A. L.Rev. 635, 731, and fn. 327.)

in this case.[6] In *Jones,* the committing magistrate ordered defendants held for the offense of "statutory" rape (Pen. Code, § 261, subd. 1), but dismissed charges of rape, oral copulation and sodomy, based upon the magistrate's stated disbelief of the prosecutrix' testimony and his finding that the latter offenses never took place. Nevertheless, the district attorney filed an information which charged the men with these offenses. We issued a peremptory writ of prohibition to restrain further proceedings, concluding that under the magistrate's findings, the offenses at issue were not shown by the evidence to have been committed (Pen. Code, § 739), and accordingly should not have been included in the information. (4 Cal.3d at p. 666.)

*Jones* reasoned that if the People chose to prepare an information charging either the offense found by the magistrate to have been committed, or related offenses supported by the evidence at the preliminary hearing (see Pen. Code, § 739), the People must abide by the magistrate's factual findings in order to comply with the constitutional mandate which " 'protects a person from prosecution in the absence of a prior determination by either a magistrate or grand jury that such action is justified.' " (4 Cal.3d at p. 664.) Yet nothing we said in *Jones* would have precluded the People from rejecting the magistrate's findings altogether, dismissing the complaint, and refiling the same charges with another magistrate (or alternatively seeking an indictment). In short, *Jones* was primarily concerned with upholding the constitutional requirement that the People first obtain an information or indictment before defendant may be tried. In the instant case, the People have fulfilled that requirement.

We acknowledge the possibility that, in a particular case, repeated prosecutions for the same offense could lead to harassment of the accused, and we have no doubt that the courts retain the inherent power to protect against serious abuses of prosecutorial discretion in this regard. (Cf. *Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206].) Yet the authorities suggest that such abuses have occurred infrequently,[7] and defendant alleges no undue harassment in the instant case.

The orders granting defendant a new trial and dismissing the action against him are reversed.

Wright, C. J., McComb, J., Sullivan, J., and Files, J.,* concurred.

---

[6]See also Graham & Letwin, *The Preliminary Hearing in Los Angeles: Some Field Findings and Legal-Policy Observations, Part II,* 18 U.C.L.A. L.Rev. 916, 961.

[7]See Graham & Letwin, *supra,* 18 U.C.L.A. L.Rev. 635, 729-730; Miller, Prosecution: The Decision to Charge a Suspect with a Crime (1970) pp. 140-141.

*Assigned by the Chairman of the Judicial Council.

**MOSK, J.—**I dissent.

My learned colleagues unanimously decided this case deliberately and correctly the first time (*People* v. *Uhlemann,* 105 Cal.Rptr. 21, filed Nov. 30, 1972, rehg. granted Jan. 3, 1973). Nothing new was presented at the rehearing. I concurred in the original resolution and adhere to it now.

After hearing nearly four days of testimony which the able and experienced magistrate described as "inherently incredible" and "unbelievable," he announced he must "disbelieve the girl [the complaining witness]" and conclude "the boy [defendant] was set up [entrapped]." The charges were then dismissed.

If the prosecution construed the dismissal to be improper on an issue of law, it had the remedy of appeal (Pen. Code, § 1466, subd. 1(a); *People* v. *Lopez* (1968) 265 Cal.App.2d Supp. 980 [71 Cal.Rptr. 667]). Instead, however, the prosecutor bluntly advised the magistrate he intended to engage in calculated forum shopping. The transcript reveals he would thereafter "refile cases out of this jurisdiction," his expressed reason being that he had lost two previous cases before the same judge. The prosecutor did indeed forum shop; he chose a forum in which the weaknesses of his case could not be exposed: the grand jury, where the defendant could not be present, could not confront witnesses, could not be represented by counsel, and was unable to present a defense.[1] An indictment, as might be expected, was returned.

The prosecutorial function is vital to our adversary system of criminal justice. But, as Justice Jackson, himself a former prosecutor, said in his dissent in *Frazier* v. *United States* (1948) 335 U.S. 497, 515 [93 L.Ed. 187, 200, 69 S.Ct. 201]: "prosecutors seldom fail to stress, if not to exaggerate, the importance of the case before them to the whole social, if not the cosmic, order."[2] Our system of criminal justice necessarily depends on what Justice Holmes described as "conscience and circumspection in prosecuting officers." (*Nash* v. *United States* (1913) 229 U.S. 373, 378 [57 L.Ed. 1232, 1236, 33 S.Ct. 780].) Thus prosecutorial zeal that de-

---

[1]The California Public Defenders Association filed an amicus curiae brief which touched a sensitive nerve: validity of currently accepted grand jury procedures. (Cal. Const., art. I, §§ 8, 13, 21.) Since the issue was not raised below, or briefed and argued on appeal, I do not reach those provocative due process and equal protection problems in this case.

[2]Justice Jackson's opinion concluded with an observation unusually pertinent to the instant case: "I would reverse this rather insignificant conviction and end this system before it builds up into a scandalous necessity for reversal of some really significant conviction."

mands an obsequious judge and inevitable victory in every case cannot be condoned. Justice demands only an impartial judge committed to no predetermined result. Such was the magistrate here.

The result of the majority opinion is to permit frustrated prosecutors to "try another and another judge until finally they found one who would grant what they were seeking," a process that can only "breed lack of confidence in the integrity of the courts." (*People* v. *Superior Court (Scofield)* (1967) 249 Cal.App.2d 727, 734 [57 Cal.Rptr. 818].)

Graham and Letwin explain it further in their article on *The Preliminary Hearings in Los Angeles: Some Field Findings and Legal-Policy Observations* (1971) 18 U.C.L.A. L.Rev. 635, 734-735: "The preliminary is a substantial burden upon the defendant. It is formal and judicial, much like a criminal trial in appearance and reality. This inevitably produces legitimate expectations that its outcome will be treated with some of that respect given a result at trial. A defendant may resign himself to the fact that a magistrate's decision in his favor may be wrong and subject to appellate correction. It is very much harder to explain to the defendant why the prosecutor on whim can disregard an adverse decision by one magistrate and simply proceed again before another. It may cross the defendant's mind that the law accords him no similar prerogative when the shoe is on the other foot. To permit the prosecutor to shop the market for a sympathetic magistrate is to invite into the charging process arbitrariness and harassment, some real, some apparent, but in either case, destructive."

There are, as I see it, two concepts involved here. "The doctrine of res judicata prevents the relitigation of issues determined by a final judgment in a prior action between the same parties or those in privity with the original parties." (*In re Crow,* 4 Cal.3d 613, 623 [94 Cal.Rptr. 254, 483 P.2d 1206].) The doctrine of collateral estoppel bars relitigation of previously decided issues sought to be raised in a new proceeding on a different cause of action. (*In re Crow, supra,* at p. 622; 1 Witkin, Cal. Crimes, § 221 et seq., and cases cited; *Ashe* v. *Swenson,* 397 U.S. 436, 445 [25 L.Ed.2d 469, 476, 90 S.Ct. 1189].) In criminal cases, these doctrines have generally been limited to situations in which jeopardy has attached at the prior proceeding. As stated in *Crow, supra,* "In criminal cases in which an individual has once been haled before a jury and found innocent, res judicata, including collateral estoppel, rests upon the double jeopardy clause of the Fifth Amendment and prevents a second prosecution for the same conduct or subject matter. (*Ashe* v. *Swenson* (1970) [*supra*] 397 U.S. 436, 445 . . . .)" (4 Cal.3d at p. 623.) Since a defendant is not placed in jeopardy at the preliminary hearing (*United States* v.

*Levy,* 268 U.S. 390, 393 [69 L.Ed. 1010, 1011, 45 S.Ct. 516]; *Ex parte Fenton* (1888) 77 Cal. 183, 184 [19 P. 267]; 1 Witkin, *supra,* § 189, p. 182), the Fifth Amendment and article I, section 13, of the California Constitution cannot be invoked to bar further prosecution.

Yet if, as here, the preliminary examination constitutes a full adversary hearing which culminates in a judicial determination that a defendant is innocent of the charges against him, I see no reason why the doctrines of res judicata or collateral estoppel should not apply. True, a number of prior cases have stated that these doctrines are inapplicable to orders dismissing criminal proceedings following preliminary hearings. *(People* v. *Prewitt* (1959) 52 Cal.2d 330, 339-340 [341 P.2d 1], and cases cited by the majority, *ante,* p. 668.) Yet none of the cited cases involved a magistrate's factual determination on the merits in favor of defendant. The prior cases reason that a dismissal following the preliminary hearing ordinarily rests merely upon the magistrate's conclusion that, for one reason or another, the particular proceedings then before him should be terminated, and not upon any determination as to the merits. *(In re Begerow* (1902) 136 Cal. 293, 297 [68 P. 773].) For example, in *People* v. *Prewitt, supra,* we noted that "This rule [permitting successive prosecutions] specifically applies when the previous dismissal was based on the magistrate's conclusion that the evidence was illegally obtained." (52 Cal.2d at p. 340.)

On the other hand, in cases in which the magistrate's dismissal is based upon a factual determination that the charges against defendant are wholly groundless, the traditional elements of res judicata and collateral estoppel are satisfied. The dismissal order would appear, under these circumstances, to possess the requisite finality, since no further judicial act remains to terminate the proceedings (Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 162, pp. 3306-3307; Rest., Judgments, § 41 and com. (a)), and in the absence of a timely appeal by the People, the order is free from direct attack (Witkin, *supra,* § 163, p. 3307). Moreover, unlike the determination that no probable cause exists to hold defendant, a dismissal order based upon the magistrate's finding of defendant's innocence constitutes a decision on the merits of the case, as required by the authorities (Witkin, *supra,* § 168 et seq.; Rest., Judgments, *supra,* §§ 48, 49, 68).

In *People* v. *Farley* (1971) 19 Cal.App.3d 215, 221 [96 Cal.Rptr. 478], the Court of Appeal analyzed the cases and determined "the practical rule to be that in cases where the magistrate makes factual findings which are fatal to the asserted conclusion that a particular offense was committed, the district attorney may not recharge that offense in the information. A clear example of this would be where the magistrate ex-

presses disbelief of a witness whose testimony is essential to the establishment of some element of the corpus delicti." In *Farley* the magistrate made no factual findings, and therefore the court found no bar to a refiling.

Thus, if we assume that the magistrate properly may reach the factual question of defendant's innocence, by resolving conflicts and weighing the evidence, it seems proper to hold as the Court of Appeal declared in *Farley* that such a determination terminates all further proceedings against defendant. Any other result would inevitably lead to unjustifiable harassment of the accused. I turn then to the question whether the committing magistrate properly may make a determination regarding the innocence of the defendant at the conclusion of the preliminary hearing.

Ordinarily, the committing magistrate will be unable or unwilling to enter any conclusive findings regarding the innocence of the accused. The magistrate's statutory role is simply to determine whether or not there is "sufficient cause" to believe defendant guilty of a public offense. (Pen. Code, §§ 871, 872.) The term "sufficient cause" is generally equivalent to "reasonable and probable cause," that is, such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*Williams* v. *Superior Court* (1969) 71 Cal.2d 1144, 1147 [80 Cal.Rptr. 747, 81 Cal. Rptr. 761, 458 P.2d 987].) As this court recently pointed out in *Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131], "Of course, the probable cause test is not identical with the test which controls a jury . . . . The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information and of every essential element of that crime. But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, 'Evidence that will justify a prosecution need not be sufficient to support a conviction. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]' "

Thus, the magistrate's role ordinarily would not lead him to form any conclusion regarding defendant's guilt or innocence. Furthermore, defense counsel rarely elect to mount a defense at the preliminary hearing and often reserve their rights of extensive cross-examination and confrontation for trial. (*Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 880

[59 Cal.Rptr. 440, 428 P.2d 304]; Cal. Criminal Law Practice (Cont.Ed. Bar 1964) § 6.13, pp. 242-244.)

Nevertheless, occasions will arise when the evidence before the magistrate points convincingly to the conclusion that the charges against a defendant are totally groundless and should be dismissed with prejudice, as e.g., indications in *Jennings* that the defendant was "framed." In view of the magistrate's power to weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses (*Jones* v. *Superior Court*, 4 Cal.3d 660, 667 [94 Cal.Rptr. 289, 483 P.2d 1241]), no reason appears to prevent him from wielding that power in an appropriate case to preclude further prosecution of an innocent accused.[3]

The contrary result permitted by the majority tends to demean the very function of the preliminary hearing, even though we made it clear in *People* v. *Elliot* (1960) 54 Cal.2d 498, 504 [6 Cal.Rptr. 753, 354 P.2d 225], that "the preliminary examination is not merely a pretrial hearing." And in *Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 150 [114 P.2d 335, 135 A.L.R. 775], we described the "purpose of the preliminary hearing is to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and the expense of a criminal trial." Obviously a refiling of the charges spares the accused neither the degradation nor expense of a criminal trial.

In *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], defendant claimed it was error for the prosecutor to include in the information filed in the superior court a count of arson dismissed by the magistrate. His contention was rejected because the magistrate's conclu-

---

[3]The framers of the proposed Model Penal Code acknowledge that the trial court properly may weigh the evidence in determining whether "reasonable cause" exists to hold a defendant for trial. (Model Penal Code of Prearraignment Procedure, Tent. Draft No. 5 (1972), § 330.5, subd. (3).) The commentators note that their proposal "is designed to indicate that the judicial role in pretrial screening involves weighing and judgment rather than a wooden comparison of the testimony with the elements of the crime. Although credibility ordinarily is a matter for the jury, and it is not expected that judges will normally resolve testimonial conflicts at the preliminary hearing, cases do occasionally arise in which a witness's testimony is so weak or contradicted by sufficiently clear facts that the judge should have the power to dismiss the case." (*Id.* at p. 91; see also Graham & Letwin, *The Preliminary Hearing in Los Angeles: Some Field Findings and Legal-Policy Observations, supra,* 18 U.C.L.A. L.Rev. 635, 702-705.) Section 330.7 of the Model Penal Code contemplates that an order dismissing the complaint for lack of reasonable cause shall bar any further prosecution unless the People move to "reinstate" the complaint on the basis of "new evidence." (*Id.* at pp. 46-47.) As stated by the commentators, "While the strict limitations of double jeopardy are inappropriate to the screening stage of the process, some degree of finality should be accorded to a determination that comes with the formality of a judicial determination upon an adversary hearing." (*Id.* at p. 48.)

sion was a matter of *law,* but relying upon *Jones* the chief justice observed for a unanimous court that had the magistrate found as a matter of *fact* that defendant had not started the fire, "the district attorney might well have been bound by his determination." (6 Cal.3d at p. 457.)

The majority vainly attempt to distinguish *Jones* v. *Superior Court* (1971) *supra,* 4 Cal.3d 660. Of course, *Jones* did not directly involve the question whether the prosecution may refile or seek an indictment regarding previously dismissed charges; our holding related to the statutory right of the People to charge either the offense named in the magistrate's commitment order or any other offense shown by the evidence at the preliminary examination to have been committed. Yet the rationale underlying *Jones* seems compelling here.

In *Jones,* we noted that if the People were permitted to ignore the magistrate's factual findings and charge offenses which were expressly found by the magistrate not to have occurred, such a procedure would "render the preliminary examination procedure largely meaningless, at least insofar as that procedure was designed to protect the accused from groundless or unsupported charges. It is well established that the defendant at a preliminary examination has the right to examine and cross-examine witnesses for the purpose of overcoming the prosecution's case or establishing an affirmative defense. [Citation.] Moreover, it is clear that it is the responsibility of the committing magistrate to weigh the evidence, resolve conflicts and give or withhold credence to particular witnesses. . . . In the instant case, petitioners were able to convince the magistrate that they did not commit the offenses charged in the complaint. To permit the district attorney to include those same charges in the information would utterly defeat the purpose of the preliminary hearing to 'weed out' groundless charges, and would render nugatory the important rights [of cross-examination] which this court was so careful to preserve in *Jennings* [v. *Superior Court, supra,* 66 Cal.2d 867]." (4 Cal.3d at pp. 666-667, 668.) In *Jennings* we insisted that a preliminary hearing cannot be reduced to "an ex parte proceeding" at which the defendant's participation would be meaningless.

It is readily apparent that the rationale underlying *Jones,* aimed at preserving the utility of the preliminary examination to weed out groundless charges, would be wholly undermined were the People permitted to ignore the magistrate's factual findings[4] and simply refile the identical

---

[4]I realize that magistrates do not ordinarily enter formal findings of fact. Yet, as in this case and in *Jones,* magistrates often set forth in informal fashion the grounds for their decision to dismiss the charges, including their resolution of material conflicts in the evidence. (See Graham & Letwin, *supra,* 18 U.C.L.A. L.Rev. at p. 732.)

charges before another magistrate or, as in the instant case, seek an indictment based upon those charges. Instead, it seems evident that the magistrate's findings must be clothed with enough finality to insure the accused a meaningful preliminary examination and to protect him from needless harassment.

This court, through Chief Justice Traynor, said in *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 826 [48 Cal.Rptr. 366, 409 P.2d 206]: "[t]here has been growing concern that both criminal defendants and the public fisc are entitled to protection from successive prosecutions for closely related crimes." If protection from successive prosecutions for *related* crimes is desirable, a fortiori protection from successive prosecutions for the *identical* crime is essential.

The result permitted by the majority also conflicts with the principles we declared in two recent opinions: *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993], and *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140].

In *Tenorio* we insisted that judicial power is compromised when a judge believes that a charge should be dismissed in the interest of justice and wishes to exercise the power to dismiss but finds that before he may do so he must obtain concurrence of the prosecutor. (3 Cal.3d at p. 94.) Accordingly, we found the prosecutor's asserted ability to thwart judicial action to be in violation of the separation of powers under article III of the California Constitution.

*Tenorio* is, of course, factually distinguishable from the instant case. But we soon extended its rationale to the authority of a magistrate at a preliminary examination in *Esteybar*. The chief justice, for a unanimous court, maintained that "we cannot tolerate permitting such an advocate [the prosecutor] to possess the power to prevent the exercise of judicial discretion . . . ." In further discussing the role of the magistrate at a preliminary hearing, this court observed: "Within the statutory framework, the magistrate at a preliminary hearing acts as an independent arbiter of the issues presented by the adversaries. He weighs evidence, resolves conflicts and gives or withholds credence to particular witnesses [citation], and just as these are judicial acts, so is the act of holding a defendant to answer. To accept the People's contention would be to reduce this function to an ex parte act and render meaningless the magistrate's independent determination." (5 Cal.3d at p. 127.)

Finally in *Esteybar* the People urged that the court was invading the "charging process," an area traditionally reserved to the prosecutor; his discretion in deciding what crime, if any, is to be charged was being

abridged. Not so, we held, for this "overlooks the fact that the magistrate's determination *follows* the district attorney's decision to prosecute." After the prosecution begins, the process thereafter is fundamentally judicial in nature. (*Ibid.*)

The instant case is a gross example of a prosecutor seeking to circumvent a judicial determination. If permitted, its effect will be to subordinate the magistrate's exercise of judicial authority to the whims of the district attorney, an officer in the executive branch of government. Thus we have executive interference in the judicial function, an evil the majority readily perceived in *Tenorio* and *Esteybar*.

The majority add "sound practical reasons" for their conclusion: magistrates need not be members of the bar, and presumably some have limited knowledge of the law. Regrettably the final elimination of nonlawyer judges in California has been a painfully slow process. But the retention of a few judges of dubious qualification reflects upon the administration of justice, not upon the rights available to a defendant. It emphasizes the difficulties a defendant may have in prevailing on a point of law—as, e.g., entrapment—rather than suggesting a "practical" need to curtail his rights. In any event no one questions the qualifications and experience of the legally trained magistrate in this case.

The People assert a decision for defendant would result in vesting too much authority in the committing magistrate. This overlooks at least three factors that will tend to check potential abuses of power.

First, few defendants charged with an offense are prepared for an extensive adversary proceeding at the preliminary examination. They seldom know the nature and extent of the accusatory evidence prior to its revelation at the preliminary examination, and therefore are unable to rebut the evidence, produce contrary evidence or even devise a theory of defense. Thus the problem here involved will rarely arise.

Second, availability of a res judicata or estoppel claim will be limited to those predictably infrequent cases in which a magistrate has made an unequivocal finding that the defendant either is factually innocent or has a legally controlling defense to the charge.

And third, as provided in the proposed Model Penal Code (*ante,* fn. 3), the People should be permitted to reinstate the complaint upon the basis of additional relevant evidence later available and with good cause shown for failure to present the evidence at the first hearing.

The majority concede "the possibility" of harassment by repeated prosecutions for the same offense. That it occurs "infrequently" is of small comfort to this defendant who, after convincing one judge of his innocence, thereafter faced another judge on identical charges.[5]

I would affirm the orders granting defendant a new trial and dismissing the action.

Tobriner, J., concurred.

Respondent's petition for a rehearing was denied August 1, 1973. Clark, J., did not participate therein. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

[5]Defendant was found guilty at trial, but the trial judge in superior court granted his motion for new trial. The People are appealing in this proceeding.