Filed 3/8/22  P. v. Sloan CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MELVIN SLOAN,<br><br>    Defendant and Appellant. | B309076<br><br>(Los Angeles County<br>Super. Ct. No. A970093-02) |

APPEAL from an order of the Superior Court of Los Angeles County, Larry P. Fidler, Judge.  Affirmed.

Boyce & Schaefer and Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Melvin Frezell Sloan appeals the trial court's order denying his petition for vacatur of his murder conviction and resentencing under Senate Bill No. 1437 (Senate Bill 1437) and Penal Code section 1170.95,[1] following an order to show cause and hearing pursuant to section 1170.95, subdivision (d)(3).

On appeal, Sloan argued that: (1) he was entitled to mandatory resentencing under section 1170.95, subdivision (d)(2); (2) the trial court erred by denying his petition without holding a section 1170.95, subdivision (d)(3) hearing; (3) the trial court erred by employing the substantial evidence standard; (4) this court should conduct an independent review of the trial court's ruling; and (5) there is insufficient evidence in the record to support the trial court's ruling. The People challenged all of Sloan's contentions.

On October 5, 2021, before the briefing was completed in this matter, the Governor signed Senate Bill No. 775 (Stats. 2021, ch. 551, §§ 1–2) (Senate Bill 775) which, effective January 1, 2022, amends section 1170.95. We invited the parties to file supplemental briefing regarding the effect, if any, of Senate Bill 775 on Sloan's case, in light of the fact that his appeal would still be pending when the legislation went into effect. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 ["'[F]or the purpose of determining the retroactive application of an amendment to a criminal statute, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed'"].)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

In his supplemental brief, Sloan argues that Senate Bill 775: (1) limits the evidence that a court may consider as part of the record of conviction to evidence introduced at trial and the procedural history contained in prior appellate opinions; and (2) reaffirms that the standard the trial court is to apply is "proof beyond a reasonable doubt" not "substantial evidence."

The People respond that, even assuming that Senate Bill 775 applies retroactively to Sloan's case, the amendments to section 1170.95 effective January 1, 2022, do not affect the outcome in this case.

We affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

### *The Murder*[2]

"On June 1, 1988, at approximately 11:00 p.m., Beverly Collins' car was stolen after the ignition was 'punched' so that it could only be operated by use of a screwdriver. . . . Approximately one and one-half hours later, Mr. Sloan drove Mr. Richmond, who was seated in the front passenger seat and armed with a 'Tech-10 Auto, [which was] similar to a[n] Uzi' and Mr. Ryals, who was seated in the rear of the car to the Venice area. Mr. Richmond claimed they went to the area in order to commit a robbery. Mr. Sloan drove the recently stolen car to a residence on Brooks Street in Venice. Mr. Sloan and Mr. Ryals got out of the

---

[2] The facts are taken from the Court of Appeal's unpublished opinion in *People v. Ryals, et al.* (Feb. 26, 1993, B046194) (*Ryals*) at pages 3 through 4.

3

car and approached the decedent. Mr. Sloan said, 'Police,' and Mr. Ryals said, 'Yes, we are the police.' The decedent then began to walk with Mr. Sloan and Mr. Ryals. Mr. Sloan and Mr. Ryals 'backed off' or 'stepped back' from the decedent one or two feet. Mr. Richmond, who was still seated in the car, then suddenly said, 'Put your hands up,' leaned over the roof of the car, and fired two or three shots. The decedent was struck and died shortly thereafter. Mr. Ryals and Mr. Sloan then jumped back into the stolen car. Mr. Sloan drove away at a high rate of speed.

"Within minutes of the shooting of the decedent, Mr. Sloan drove the stolen car next to an automobile driven by Joseph Abdullah in which Debbie Fox was a passenger. Mr. Ryals, who was seated in the backseat, said, 'Crips, Crips, Crips' and flashed gang signs. One of the occupants of the car said, '"Die white boy."' A high speed chase ensued and a shot was fired from the passenger side of Ms. Collins's stolen automobile into Mr. Abdullah's car which punctured the gas tank.

"As the car driven by Mr. Sloan continued to pursue Mr. Abdullah and Ms. Fox, Santa Monica Police Department Sergeant Barry Barcroft saw the chase. Sergeant Barcroft began to pursue the car driven by Mr. Sloan. Sergeant Barcroft lost sight of the stolen car briefly. When he saw the car again, Mr. Ryals and Mr. Richmond had jumped from the stolen automobile. Finally, Mr. Sloan was arrested. In the car, a clip containing live ammunition which fit the weapon which could have been used to shoot the decedent was found on the 'front passenger side of the vehicle.' In the rear seat area, a nine millimeter round was discovered. Mr. Richmond and Mr. Ryals were first detained and later arrested in a nearby area where they had jumped out of the stolen car driven by Mr. Sloan during the high speed chase

involving Sergeant Barcroft. A[n] Uzi with no clip or rounds in it was found approximately 50 feet from the site of the initial detention of Mr. Sloan and Mr. Richmond. Mr. Ryals had a screwdriver in his pocket."

After he was arrested, Richmond told the police that he went to the area to commit a robbery. (*Ryals, supra*, B046194, at p. 8.)

## *Trial*

At trial, the prosecutor proceeded on two theories of liability with respect to the murder: Sloan directly aided and abetted Richmond in committing murder, or Sloan was guilty of felony murder based on his participation in an attempted robbery.

The jury found Sloan guilty of one count of murder (§ 187, subd. (a) [count 1]), and two counts of attempted murder (§§ 187, subd. (a)/664 [counts 2 & 3]). It found true the allegations that a principal was armed with a firearm as to all counts (§ 12022, subd. (a)(1)).

Sloan was sentenced to 34 years to life in prison.

## *Direct Appeal*

On appeal, the appellate court affirmed the trial court's judgment in its entirety.

As relevant here, Sloan first contended that the evidence was insufficient to support a finding of premeditation and deliberation or shared criminal intent to kill. The Court of Appeal disagreed. It explained: "The unique nature of the killing

5

was such as to indicate planning. The evidence was almost entirely uncontradicted. Although premeditation 'can occur in a brief period of time,' [citation], in the present case there was overwhelming evidence that the murder was part of a calculated and planned killing. Evidence of 'planning activity' [citation] included: the theft of Ms. Collins' automobile thereby making it more difficult to identify the perpetrators of the crime; false claims by Mr. Ryals and Mr. Sloan that they were police officers in an effort to distract the decedent and induce him to comply with their demands; the fact that just before the shots were fired, both Mr. Ryals and Mr. Sloan stepped away thereby allowing Mr. Richmond to fire without exposing his confederates to injury; Mr. Richmond fired from behind the car which provided him with both cover and concealment; there was no evidence of provocation on the part of the decedent which supports the inference that the attack was the 'result of a deliberate plan rather than a "rash explosion of violence"' [citation]; the decedent was unarmed [citation]; the trio's flight after the shooting; and the fact that immediately after the decedent was shot, an extraordinarily violent effort was made to deliberately kill Mr. Abdullah. The foregoing constituted substantial evidence the killing was willful, deliberate, and premeditated." (*Ryals, supra*, B046194, at pp. 5–6.)

Sloan also appealed the trial court's ruling admitting Richmond's statement to police that he went to the area to commit a robbery, contending that the statement should have been excluded as hearsay and that its admission violated Sloan's constitutional right to confront witnesses. The Court of Appeal held that the statement was admissible as a statement against interest. (*Ryals, supra*, B046194, at pp. 8–9.)

6

*Section 1170.95 Petition*

On January 18, 2019, Sloan filed a petition for resentencing under section 1170.95, utilizing a standard form.[3] The court appointed counsel.

The prosecution filed a response opposing Sloan's petition on January 10, 2020, arguing Sloan directly aided and abetted the perpetrator in the murder of the victim or, in the alternative, Sloan was a major participant in the underlying attempted robbery who acted with reckless indifference to human life. The prosecution attached the prior opinion of the Court of Appeal.

On April 3, 2020, Sloan filed a supplemental petition, or, in the alternative, a reply in support of his petition for resentencing. Sloan argued that: (1) Senate Bill 1437 is constitutional; (2) he made a prima facie showing of eligibility because he was convicted under a felony murder theory of liability; (3) he was entitled to resentencing because there was insufficient evidence that he committed malice murder or was a direct aider and abettor; and (4) there was insufficient evidence that he committed felony murder—i.e. that he was a major participant in the attempted robbery who acted with reckless disregard for human life.

---

[3] Although the court did not deny the petition on this basis, Sloan's petition was not facially sufficient. Sloan attested that he had been convicted of first degree felony murder and was not the actual killer, but he did not deny that he aided and abetted the perpetrator with intent to kill the victim, and did not deny that he was a major participant in the attempted robbery who acted with reckless indifference to human life. He did not attest that he was convicted under the natural and probable consequences doctrine.

On August 31, 2020, the trial court issued an order to show cause why relief should not be granted, and ordered the clerk to notify the parties to set the matter for hearing. Sloan waived his right to be present for the hearing.

On the morning of October 15, 2020, the prosecutor filed a motion requesting that the trial court reconsider its issuance of the order to show cause on the bases that (1) Sloan had presented no new evidence and (2) the Court of Appeal had already upheld Sloan's murder conviction on a theory of express malice in its prior opinion. Alternatively, the People argued that the record showed Sloan was a major participant in the attempted robbery who acted with reckless disregard for human life.

Later that same morning, the trial court held the hearing on Sloan's petition. At the hearing, the trial court stated that it had read and considered all of the parties' filings, including the motion for reconsideration filed by the prosecution that morning. Defense counsel pointed out that, with respect to new evidence, Sloan's reply cited a comment the shooter made to investigating authorities that he had acted on impulse and that there was no plan to shoot and kill anyone; the comment, which had been the subject of a motion in limine, had not been admitted during trial. Sloan's counsel then submitted the matter. The prosecutor requested that he be permitted to lodge a CD of the trial record contained in the Attorney General's file. The court granted the request and directed the prosecutor to mark the CD as Exhibit 1.[4] The court stated that it would issue a written decision as soon as it was able to do so.

---

[4] Exhibit 1 was not included in the record on appeal. This court issued a letter to the parties on December 13, 2021, ordering the parties to confer and either: (1) co-ordinate to

8

## *Trial Court's Ruling*

The trial court denied the petition in a minute order dated November 4, 2020. We include the entirety of the trial court's ruling for clarity here, although it is repetitive of the facts and procedural history above:

> "Facts Including Observations of the Court of Appeal Taken From the Opinion of the Court of Appeal
>
> "On June 1, 1988, at approximately 11:00 p.m., Beverly Collins' car was stolen after the ignition was 'punched' so that it could only be operated by use of a screwdriver. . . . Approximately one and one-half hours later, Mr. Sloan drove Mr. Richmond, who was seated in the front passenger seat and armed with a 'Tech-10 Auto, [which was] similar to a[n] Uzi' and Mr. Ryals, who was seated in the rear of the car to the Venice area. Mr. Richmond claimed they went to the area in order to commit a robbery. Mr. Sloan drove the recently stolen car to a residence on Brooks Street in Venice. Mr. Sloan and Mr. Ryals got out of the car and approached the decedent. Mr. Sloan said, 'Police,' and Mr. Ryals said, 'Yes, we are the police.'

augment the appellate record with the trial court record in Los Angeles Superior Court, Case No. A970093, or (2) if the trial court record could not be located, file declarations so stating and describing their efforts to obtain it. The parties complied, and our appellate record was augmented to include the trial court record.

The decedent then began to walk with Mr. Sloan and Mr. Ryals.  Mr. Sloan and Mr. Ryals 'backed off' or 'stepped back' from the decedent one or two feet.  Mr. Richmond, who was still seated in the car, then suddenly said, 'Put your hands up,' leaned over the roof of the car, and fired two or three shots.  The decedent was struck and died shortly thereafter.  Mr. Ryals and Mr. Sloan then jumped back into the stolen car.  Mr. Sloan drove away at a high rate of speed.

"Within minutes of the shooting of the decedent, Mr. Sloan drove the stolen car next to an automobile driven by Joseph Abdullah in which Debbie Fox was a passenger.  Mr. Ryals, who was seated in the back seat, said, 'Crips, Crips, Crips' and flashed gang signs.  One of the occupants of the car said, "'Die white boy.'"  A high speed chase ensued and a shot was fired from the passenger side of Ms. Collins's stolen automobile into Mr. Abdullah's car which punctured the gas tank.

"As the car driven by Mr. Sloan continued to pursue Mr. Abdullah and Ms. Fox, Santa Monica Police Department Sergeant Barry Barcroft saw the chase.  Sergeant Barcroft began to pursue the car driven by Mr. Sloan.  Sergeant Barcroft lost sight of the stolen car briefly.  When he saw the car again, Mr. Ryals and Mr. Richmond had jumped from the stolen automobile.  Finally, Mr. Sloan was arrested.  In the car, a clip containing live ammunition which fit the weapon which could have been used to shoot the decedent was found on the 'front passenger side

of the vehicle.'  In the rear seat area, a nine millimeter round was discovered.  Mr. Richmond and Mr. Ryals were first detained and later arrested in a nearby area where they had jumped out of the stolen car driven by Mr. Sloan during the high speed chase involving Sergeant Barcroft.  A[n] Uzi with no clip or rounds in it was found approximately 50 feet from the site of the initial detention of Mr. Sloan and Mr. Richmond.  Mr. Ryals had a screwdriver in his pocket.

"The unique nature of the killing was such as to indicate planning.  The evidence was almost entirely uncontradicted.  Although premeditation 'can occur in a brief period of time,' in the present case there was overwhelming [evidence] that the murder was part of a calculated and planned killing.  Evidence of 'planning activity' included:  the theft of Ms. Collins' automobile thereby making it more difficult to identify the perpetrators of the crime; false claims by Mr. Ryals and Mr. Sloan that they were police officers in an effort to distract the decedent and induce him to comply with their demands; the fact that just before the shots were fired, both Mr. Ryals and Mr. Sloan stepped away thereby allowing Mr. Richmond to fire without exposing his confederates to injury; Mr. Richmond fired from behind the car which provided him with both cover and concealment; there was no evidence of provocation on the part of the decedent which supports the inference that the attack was the 'result of a deliberate plan rather than

11

a "rash explosion of violence"'; the decedent was unarmed; the trio's flight after the shooting; and the fact that immediately after the decedent was shot, an extraordinarily violent effort was made to deliberately kill Mr. Abdullah. The foregoing constituted substantial evidence the killing was willful, deliberate and premeditated.

"As is relevant to this petition, petitioner was convicted of first degree murder under one of two theories:

"1. Aiding and abetting;

"2. Felony murder

"As to aiding and abetting, the evidence shows and the court of appeal found that petitioner and his two co-defendants were acting together and in fact, petitioner and one of his co-defendants, stepped away from the decedent to allow the other co-defendant to get a clear shot.

"As to felony murder, the Banks/Clark factors should be viewed as follows:

"((2015) People v. Banks 61 Cal.4th 788; (2016) People v. Clark 63 Cal.4th 522)

"Petitioner's act of stepping out of the way leads to the conclusion he was aware of the plan to shoot the victim and knew a gun was going to be used. For the same reason, petitioner would have known of the risk and dangers involved in a shooting.

"The petitioner was present and did in fact facilitate the killing. The petitioner fled the scene

and went looking for a second victim. Petitioner did nothing to minimize the risk to the victim.

"The People have proved, beyond a reasonable doubt, that [sic] each element of murder under current law and that the petitioner was a major participant in an attempted robbery and acted with reckless indifference to human life and with the intent to kill, aided and abetted the actual killer in the commission of the murder in the first degree.

"The petition is denied."

Sloan timely appealed.

## DISCUSSION

Senate Bill 775 is currently in effect. By its own terms, section 1170.95 applies to Sloan's case. (§ 1170.95, subd. (a) [persons convicted of murder under the felony murder theory of liability may petition for resentencing].)

Pursuant to amended section 1170.95, an offender must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have

13

been convicted of murder or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(1)–(3); see also § 1170.95 subd. (b)(1)(A).) Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

"Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) The prosecutor shall file a response within 60 days of the service of the petition, and the petitioner may file a reply within 30 days of the response. (§ 1170.95, subd. (c).) When briefing has been completed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid*.) Within 60 days of issuance of the order to show cause, the trial court shall hold a hearing "to determine whether the petitioner is entitled to relief." (§ 1170.95, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed

14

by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens.  A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.  If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3).)  The trial court acts as the finder of fact when determining whether the prosecution has met its burden beyond a reasonable doubt.  (*Ibid*.; *People v. Gentile* (2020) 10 Cal.5th 830, 855 ["section 1170.95 requires the superior court to determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the defendant is entitled to relief"].)

***Sloan is Not Entitled to Relief Under Section 1170.95,
Subdivision (d)(2)***

Sloan first contends that he is entitled to relief under section 1170.95, subdivision (d)(2), which provides, "If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner."[5]  Sloan argues that the magistrate's dismissal of an attempted robbery/murder special circumstance allegation at the preliminary hearing is a "prior finding of the court" that entitles him to resentencing under that section.

Sloan's argument lacks merit.  A magistrate's dismissal of a special circumstance allegation at the preliminary hearing stage is not equivalent to a finding of a court or the jury.  The role of a magistrate is limited by statute.  (*People v. Uhlemann* (1973) 9 Cal.3d 662, 667; §§ 871, 872.)  Unlike a finding by a court or the jury, a magistrate's dismissal of a charge for insufficient evidence is not "a valid determination on the merits of the charges against him."  (*Id.* at pp. 666–667.)  There is no basis for treating the magistrate's determination as if it were a court's finding, and section 1170.95, subdivision (d)(2), does not require resentencing on the basis of a magistrate's dismissal of a charge at a preliminary hearing.  Sloan's contention fails.

---

[5] Senate Bill 775 did not modify this sentence of section 1170.95, subdivision (d)(2), and Sloan did not make any additional arguments related to this issue in his supplemental letter brief.

16

***The Trial Court Held a Hearing Pursuant to Section 1170.95, Subdivision (d)(3) and Employed the Beyond a Reasonable Doubt Standard***

Sloan next argues that the trial court did not conduct a hearing as required under section 1170.95, subdivision (d)(3). Alternatively, Sloan contends that even if the trial court did conduct a section 1170.95, subdivision (d)(3) hearing, the trial court failed to act as an independent fact-finder and employ the correct standard of proof beyond a reasonable doubt in denying his petition for resentencing. Both arguments are belied by the record.

The record demonstrates that the trial court held a hearing pursuant to section 1170.95, subdivision (d)(3). The trial court appointed counsel, accepted briefing, issued an order to show cause, and set an evidentiary hearing. Although the prosecutor filed a motion requesting that the court reconsider its finding that Sloan made the prima facie showing entitling him to a hearing, the court did not grant the motion, and did not revisit the question of Sloan's prima facie eligibility under section 1170.95, subdivision (c). The court gave the parties the opportunity to introduce additional evidence and to argue the matter at the hearing. Sloan's counsel offered as new or additional evidence a statement of the shooter, Richmond, that had not been admitted at trial; in that statement, Richmond told investigating authorities that he had acted on impulse and that there was no plan to shoot and kill anyone.

The trial court made an independent ruling. The court ruled in a detailed written minute order that, as to aiding and abetting, "the evidence shows" that Sloan acted in concert with

17

the shooter, stepping back to allow him to get a clear shot at the victim. With respect to felony murder, the trial court analyzed the facts under the factors set forth in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). The court found that Sloan was a major participant in the attempted robbery and acted with reckless indifference to human life: Sloan stepped out of the way to give his compatriot a clear shot at the victim, which the court found proved that Sloan knew a gun would be used in the robbery and that Sloan was aware of a plan to shoot the victim. Sloan knew of the dangers and risks to the victim. Sloan was present and facilitated the killing. Afterwards, Sloan did nothing to aid the victim, and fled the scene. The trial court clearly conducted its own independent analysis of the facts, as the Court of Appeal did not discuss whether Sloan was a major participant who acted with reckless indifference in its opinion.

The trial court did not erroneously employ the substantial evidence standard of proof. The trial court prefaced its ruling by including "facts and observations," which it quoted from the Court of Appeal's opinion. The reference to "substantial evidence" was contained in the lengthy quote of the Court of Appeal's opinion, not in the trial court's own ruling on the section 1170.95 petition that followed the recitation of the factual and procedural history of the case. In its ruling, the trial court relied on what "the evidence shows" . . . and found "[t]he People have proved, beyond a reasonable doubt . . . each element of murder under the current law and that the petitioner was a major participant in an attempted robbery and acted with reckless indifference to human life and with the intent to kill, aided and abetted the actual killer in the commission of the murder."

18

In his supplemental letter brief, Sloan argues that section 1170.95, subdivision (d)(3), as amended by Senate Bill 775, limits consideration of a prior opinion of the Court of Appeal to the procedural history of the case recited therein. Even assuming that Sloan's interpretation of the amendments to section 1170.95, subdivision (d)(3) is correct, we do not interpret the trial court's inclusion of the facts in the prior appellate opinion as an indication that the court relied on the facts as recited in the opinion, rather than reviewing the record of the trial (which was lodged at the hearing) and forming an independent view of the evidence presented at trial. The trial court's ruling indicates that it reviewed "the evidence." Sloan does not argue that the facts included in the trial court's ruling are an inaccurate reflection of the facts introduced at trial, and our review of the evidence contained in the trial record does not reveal inaccuracies or omissions.

### *This Court Employs the Substantial Evidence Standard When Reviewing a Trial Court's Denial of an 1170.95 Petition Following a Hearing Held Pursuant to Subdivision (d)(3).*

Sloan next argues that this court should independently review the trial court's ruling. This contention is also without merit.

The courts of appeal have uniformly held that this court applies the substantial evidence standard when reviewing a trial court's order denying a section 1170.95 petition following a subdivision (d)(3) hearing. (See *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985; *People v. Bascomb* (2020) 55 Cal.App.5th

19

1077, 1087; *People v. Williams* (2020) 57 Cal.App.5th 652, 663 (*Williams*).)

Sloan first contends that we should review the trial court's ruling independently because the trial court relied on the Court of Appeal's opinion and the recitation of the facts contained therein. As we discussed, *post*, although the trial court began its ruling by recounting the Court of Appeal's opinion and observations, the court engaged in independent fact-finding when ruling on Sloan's petition. The prosecutor lodged the Attorney General's file on the case, which included the clerk's transcript and reporter's transcript from Sloan's trial. Sloan's assertion that the trial court relied solely on the Court of Appeal's opinion is without merit.

Sloan next contends that we should review the trial court's ruling independently, because the court's inquiry was limited to a "cold record," without the benefit of in-person observations. He argues that under these circumstances the trial court has no advantage over an appellate court when making factual findings, and its findings should not be given deference. Our Supreme Court has held that "even if the trial court is bound by and relies solely on the record of conviction to determine eligibility, [where] the question . . . remains a question of fact, [there is] no reason to withhold the deference generally afforded to such factual findings." (*People v. Perez* (2018) 4 Cal.5th 1055, 1066.)

The cases Sloan cites in support of his "cold record" argument are readily distinguishable from the case at bar. In *People v. Vivar* (2021) 11 Cal.5th 510, 524 (*Vivar*), our Supreme Court held that independent review is appropriate when evaluating issues that are predominantly questions of law, specifically: whether, in the context of a plea bargain, counsel's

20

advice regarding the immigration consequences of a plea of no contest was inadequate and, if so, whether the error was prejudicial. In *People v. Maury* (2003) 30 Cal.4th 342 (*Maury*), the Supreme Court held that independent review is appropriate when considering the legal question of whether incriminating statements are voluntary where the incriminating statement is tape-recorded and there is no testimony that contradicts the statement. In *Vivar* and *Maury*, the issues decided were legal or predominantly legal, not factual. In contrast, the questions of Sloan's intent and whether he was a major participant in an attempted robbery who acted with reckless indifference to human life are determinations of fact.

### *Substantial Evidence Supports the Trial Court's Findings*

Finally, Sloan argues that the trial court's findings that Sloan (1) intended to kill, and (2) was a major participant in the attempted robbery who acted with reckless indifference to human life, are not supported by substantial evidence in the record. We disagree.

"The scope of our review for substantial evidence is well settled. The test is not whether the People met their burden of proving beyond a reasonable doubt that [the petitioner] was ineligible for resentencing, but rather 'whether *any* rational trier of fact could have' made the same determination, namely that '[t]he record . . . disclose[s] . . . evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [as did the superior court]. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of

21

every fact the [superior court] could reasonably have deduced from the evidence. [Citation.] "Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends. [Citation.]'" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)" (*Williams, supra*, 57 Cal.App.5th at p. 663.)

## **Direct Aider and Abettor/Intent to Kill**

Substantial evidence supports the trial court's finding that Sloan aided and abetted the murder with intent to kill. Sloan drove his compatriots to the decedent's home with Richmond sitting next to him armed with a "'Tech-10 Auto, similar to a[n] Uzi.'" When they reached the decedent's home, Sloan and Ryals exited the vehicle and lured the decedent toward the car by claiming to be police officers. Sloan personally identified himself as "police." Sloan and Ryals convinced the victim to walk with them, and then stepped away from the victim, giving Richmond a clear shot. As soon as the victim was hit, Sloan and Ryals got back into the vehicle, and Sloan drove the men away from the scene. There was no evidence that Sloan tried to stop the shooting, help the victim, or cease in his facilitation of the murder. Instead, he helped Richmond and Ryals escape the scene, and pursued another vehicle in a high speed chase in which one of the three men shot at the other vehicle. All of the circumstantial evidence leads to the reasonable inference that Sloan worked with Richmond and Ryals to ambush the victim and kill him.

22

## Felony Murder

### *Major Participant*

In determining whether the defendant was a major participant in the underlying felony, "the ultimate question [is] whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations.]" (*Banks*, *supra*, 61 Cal.4th at p. 803.) To do so, we consider multiple factors, including: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

Substantial evidence supports the trial court's finding that Sloan was a major participant in an attempted robbery. It can be inferred that Sloan was aware that Richmond was armed with a "'Tech-10 Auto'" from the fact that Richmond was seated next to Sloan in the vehicle. Sloan's subsequent action of stepping back to give Richmond a clear shot indicates both that he was aware of the gun and that he knew it would be used. Sloan played a crucial role in the attempted robbery: he transported Richmond

and Ryals to the victim's home, lured the victim by claiming to be a police officer, and then acted as the getaway driver. He was present at the scene, and in a position to prevent the murder, but instead played an active role in bringing about the victim's death. If not for Sloan's actions, the victim would not have been so well-positioned for Richmond to shoot him. After the victim was shot, Sloan immediately fled the scene and enabled Ryals and Richmond's escape as his passengers. Sloan's actions indicated no concern for the victim or for anyone else—he left the scene of one murder to facilitate a second shooting. Although there was no evidence presented regarding whether Sloan helped plan the attempted robbery or supplied Richmond with the "'Tech-10 Auto,'" these factors do not out-weigh the other abundant evidence of Sloan's major participation in the crime.

*Reckless Indifference*

"'A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' (Model Pen. Code § 2.02, subd. (2)(c).)" (*Clark*, *supra*, 63 Cal.4th at p. 617, fn. omitted.)

In determining whether the defendant exhibited "'reckless indifference to human life' within the meaning of section 190.2, subdivision (d), . . . we consider the specific facts of [the] case in

light of some of the case-specific factors that this court and other state appellate courts have considered in upholding a determination of reckless indifference to human life in cases involving nonshooter aiders and abettors to commercial armed robbery felony murders. . . . '[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' (*Banks*, *supra*, 61 Cal.4th at p. 803.)" (*Clark*, *supra*, 63 Cal.4th at p. 618.) These factors include: (1) knowledge, use, and number of weapons; (2) physical presence at the crime and opportunity to restrain the crime and/or aid the victim; (3) the duration of the felony; (4) the defendant's knowledge of the likelihood of killing; and (5) the defendant's efforts to minimize the risk of violence during the felony. (*Clark*, *supra*, at pp. 618–622.)

Substantial evidence also supports the trial court's finding that Sloan acted with reckless indifference to human life. Many of the same factors relevant to the major participation inquiry are relevant here as well. The evidence shows that Sloan was aware that Richmond was armed. He was present at the scene and could have potentially aided the victim. Instead, he insured that the victim was placed in harm's way by luring him closer to the vehicle where Richmond waited with the "'Tech-10 Auto'" and then stepping aside to allow Richmond to get a good shot. These actions demonstrate that Sloan knew that the likelihood that the victim would be killed was high. He made no efforts to minimize the risk of violence. The only factors that weigh in Sloan's favor are that the crime occurred quickly and Richmond was armed with a single gun, which do not outweigh the factors that militate against him.

## DISPOSITION

We affirm the trial court's order denying Sloan's petition for resentencing under section 1170.95.


MOOR, J.


We concur:


BAKER, Acting P.J.


KIM, J.