Filed 8/24/23  P. v. Burks CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>OHMAD RASHAD BURKS,<br><br>        Defendant and Appellant. | A163740<br><br>(Contra Costa County<br>Super. Ct. No. 5-131405-3) |

Ohmad Rashad Burks appeals from the denial of his petition for resentencing pursuant to Penal Code section 1170.95, now section 1172.6.[1] Burks was convicted of first degree murder, second degree robbery, and shooting at an occupied vehicle.  On appeal, Burks argues his petition should have been granted because the court previously set aside gang-murder and felony-murder special circumstances allegations pursuant to section 995 after finding the prosecution presented insufficient evidence that Burks acted with

---

[1]     All further statutory references are to the Penal Code.

While this appeal was pending, section 1170.95 was renumbered to section 1172.6.  (Stats. 2022, ch. 58, § 10; see *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.)  As such, we will refer to section 1172.6, but we will also refer to section 1170.95 as necessary to conform to the record.

1

intent to kill or reckless indifference to human life. He also argues that the People are collaterally estopped from contesting the court's section 995 determination and that substantial evidence did not support the conclusion that he was a major participant in the robbery at issue or that he acted with reckless indifference to human life.

Burks's contentions regarding the trial court's prior determination under section 995 and its purported collateral estoppel effect are without merit. But, as the People concede, the court should have considered Burks's youth as a factor when determining whether he acted with reckless indifference to human life. (*In re Moore* (2021) 68 Cal.App.5th 434, 454 (*Moore*).) For this reason, and without suggesting any opinion as to the ultimate outcome, we will remand for the court's consideration of all relevant factors consistent with prevailing law. (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1079 (*Jones*).)

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. The Underlying Crimes and Procedural History**

We begin with an overview of the crimes and the proceedings leading to Burks's sentence. Preliminarily, we grant Burks's unopposed request for judicial notice of our own records and files in the prior joint appeal of Burks and Clarence Cater (*People v. Cater* (May 29, 2019, A146678) [nonpub. opn.] (*People v. Cater*)), which we have reviewed.

Burks and co-defendant Cater were charged by information with murder (§ 187), second degree robbery (§§ 211, 212.5), and shooting at an occupied vehicle (§ 246). The People further alleged gang and weapon enhancements as to each count (§§ 186.22, subd. (b)(1), 12022.53, subds. (b)– (e)). In the midst of jury selection, the People filed an amended information adding felony-murder and gang-murder special circumstance allegations

2

against both Burks and Cater (§ 190.2, subd. (a)(17) & (22)). Burks filed a section 995 motion to set aside the special circumstance allegations, which the court granted in the midst of trial.

In ruling on that section 995 motion, the trial court considered only the preliminary hearing transcript. The court set aside the felony-murder and gang-murder special circumstance allegations as to Burks after finding the transcript lacked substantial evidence showing that Burks—who was not the actual killer—specifically intended to kill the victim or acted with reckless indifference to human life. (§ 190.2, subds. (a)(17), (a)(22), (c), (d); *People v. Estrada* (1995) 11 Cal.4th 568, 572; *People v. Mejia* (2012) 211 Cal.App.4th 586, 611.)

The following is a summary of the trial evidence taken from our previous opinion, *People v. Cater*, *supra* (all footnotes omitted).[2]

"Burks was a founding member with his brothers of a rap group called 'Knockin' Niggas Instantly,' or 'KNI.' Burks used the KNI moniker of 'Poo' or 'Pooh.' KNI soon morphed into a criminal street gang, with its members engaging in crimes including robbery and assault. Young gang members were known as 'baby KNI,' and members' girlfriends were known as 'Knockin' Bitches Instantly,' or 'KBI.' Cater and J.E. (a minor at the time of the

---

[2] Effective January 1, 2022, and before being renumbered, section 1170.95 was amended to restrict consideration of prior appellate opinions to the procedural history of the case recited therein. (*People v. Clements* (2022) 75 Cal.App.5th 276, 292 (*Clements*).) We borrow the recitation of facts from our prior opinion solely for the sake of efficiency. Having granted Burks's request for judicial notice of the record in his prior appeal, we note our recitation is supported by admissible portions of that record, as Burks appears to concede. We acknowledge Burks's contention that—while the facts set out in the prior opinion were supported, there was conflicting evidence on some points.

3

charged crimes) were also KNI members, with Cater using the moniker 'Kayta.'

"On September 7, 2012, Dayvon George and his brother W.G. (collectively, the brothers) were at Buchanan Park in Pittsburg filming a music video for their rap group, MIA Boys (MIA). Music video producer T.L. had posted an open invitation to the video shoot on social media, and a group of people had gathered, including several children who planned to be in the video. Although MIA was not a gang, it had conflicts in the past with KNI. In particular, just a few weeks prior, the brothers and KNI had a confrontation at a Chuck E. Cheese's restaurant after Dayvon confronted Cater and accused Cater of jumping him on a prior occasion. At the time, W.G. heard Cater yelling something about KNI.

"Also present at Buchanan Park on September 7 were defendants, J.E., and Burks's off and on girlfriend, K.L. Earlier, a friend had driven Burks and K.L. to Antioch, [and] Burks obtained a gun from his brother. At about 4:00 p.m., Burks spoke by phone with J.E.'s mother, T.R., and told her he would be meeting up with J.E. shortly. T.R. then called J.E., who told his mother he would be at the park for a rap shoot. Burks and K.L. picked up Cater and J.E. on their way back to the park. Once there, the group talked about MIA, with Burks telling K.L., 'We about to handle something, stay up here.' J.E. announced, 'I'm about to rob these niggas.' Shortly after, at about 6:00 p.m., Cater, Burks and J.E. walked down the hill where they had congregated toward the parking lot where MIA was filming the music video.

"After descending the hill, the three men confronted the brothers, with one of them asking, 'Do you remember me?' T.L., the music producer, asked whether the men would like to join the video. Burks responded, 'I ain't down here for none of that.' The brothers and their friend B.D., who was also

4

present, were concerned and tried to leave, prompting Burks to reveal the gun in his waistband and warn, 'Don't do nothing stupid.' According to B.D., someone said, 'Don't get in the car or it's going to be bad.' Burks then told B.D. not to try anything 'funny' or he would 'knock you down.' At that point, W.G. or Dayvon had T.L. drive the children who were present away in his car.

"Turning to J.E. and Cater, Burks then asked, 'What y'all trying to do? Because I'm done talking.' J.E. demanded that W.G. turn over his chain necklace and watch, which he did. Cater pulled out his gun, telling W.G. that he would shoot him and kill his brother. Dayvon tried to swat the gun away. He then took off running as Cater began shooting.

"Cater chased Dayvon and continued to fire shots, while Burks chased W.G. According to D.P., who was seated in his car in the parking lot waiting on his elderly mother, Cater fired at least three shots. D.P. looked up after hearing a 'pop' and saw Dayvon run by followed by Cater, who was tracking Dayvon with his gun. D.P. then saw Cater point his gun in his direction and fire, at which point D.P.'s passenger window shattered. The window glass cut D.P.'s arm, causing a wound not requiring medical attention. Dayvon died in the parking lot shortly afterward from two gunshot wounds. A 'very upset' witness on the scene 'scream[ed] that his friend had been shot,' saying 'over and over again' that 'KNI killed him . . . .'

"After the shooting, Burks retreated from the parking lot back up the hill. Burks gave K.L. his gun, sweater and hat, which she took as she left the park. Burks then called A.F., mother to one of his children, who took him into her home. Burks and Cater 'probably' spoke by phone. Cater then later arrived at A.F.'s house, requesting two bottles of water.

"Six days later, Burks contacted the police and gave an interview. Initially, he denied having a gun at the park but later acknowledged having one. Burks also denied arriving at the park with J.E. and Cater.

"Burks later testified at trial and several times contradicted his earlier statements to police. Burks denied that KNI was a criminal street gang and that he had planned to rob or kill the brothers. He also denied being friends with J.E. and claimed not to get along with Cater. He insisted that he accompanied the men to the parking lot at the park to keep them out of trouble; he did not know Cater had a gun. Nor did he know either man had a plan to kill or rob the brothers.

"K.L. was also interviewed by the police and later testified at trial. Like Burks, K.L. first claimed Burks was unarmed and arrived separately at the park from Cater and J.E. She later acknowledged Burks had asked her to lie about the gun and told the police where she had hidden it. At trial, K.L. acknowledged Burks, Cater and J.E. were KNI gang members and that Burks was a KNI leader, Cater a junior member, and J.E. a 'baby KNI.' She described KNI as like a family, with its members looking out for each other."

The jury was instructed on murder and felony-murder principles. The jury was instructed that if it concluded the defendants committed murder, it was first degree murder under the following circumstances: if the defendants caused a person's death while committing and intending to commit a robbery, or if a defendant who did not personally commit robbery, aided and abetted and intended to aid and abet a robbery where a perpetrator caused another person's death.

The jury convicted Burks and Cater of first degree murder and the remaining counts, and found all enhancements true. As to Cater, the jury found true the felony-murder and gang-murder special circumstances

6

(§ 190.2, subd. (a)(17) & (22)).  The trial court sentenced Burks to prison for 50 years to life.  This court affirmed Burks's convictions in 2019, though we remanded for resentencing due to legislative amendments giving the trial court authority to strike or dismiss the firearm enhancements imposed against defendant, and to permit appellant to make a record of relevant evidence in anticipation of any future youth offender parole hearing.  (*People v. Cater, supra.*)

**B.  Proceedings on the Section 1170.95 Petition**

In 2019, Burks filed a form petition for resentencing pursuant to former section 1170.95.  Burks's petition checked boxes indicating that:  (1) a charging document was filed against him allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he was convicted of first or second degree murder under the felony-murder rule or natural and probable consequences doctrine; and (3) he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 effective January 1, 2019.  Burks also checked boxes indicating that he could not now be convicted of first degree felony murder because he was not the actual killer; he did not aid and abet the murder with intent to kill; he was not a major participant in the underlying felony who acted with reckless indifference to life; and there was a prior determination by a court or jury that he was not a major participant and/or did not act with reckless indifference to life under section 190.2, subdivision (d).

The trial court issued an order to show cause and thereafter the parties filed briefs.  Burks argued he was entitled to vacatur of his murder conviction pursuant to former section 1170.95, subdivision (d)(2), which then provided:  "If there was a prior finding by a court or jury that the petitioner did not act

7

with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (Now § 1172.6, subd. (d)(2) ("1172.6(d)(2)").) Burks claimed the court's basis for granting his section 995 motion—i.e., insufficiency of evidence at the preliminary hearing that he acted with specific intent to kill or with reckless indifference to human life—mandated vacatur because it amounted to a "finding" under subdivision (d)(2) of section 1170.95 that he did not act with reckless indifference.

In September 2021, after an evidentiary hearing where no "new or additional evidence" was presented (§ 1172.6, subd. (d)(3) ("1172.6(d)(3)")), the trial court denied the petition. Specifically, the court found its prior order setting aside the special circumstances did not require vacatur of the murder conviction and did not collaterally estop the court from finding Burks was a major participant who acted with reckless indifference to human life. This appeal followed.

DISCUSSION

**A. General Principles**

In 2018, the Legislature enacted Senate Bill No. 1437 (Senate Bill 1437) which " 'amend[ed] the felony[-]murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

As relevant here, Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e): " 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was

8

the actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' " (*Gentile*, *supra*, 10 Cal.5th at p. 842.)

Senate Bill 1437 also amended the natural and probable consequences doctrine by adding section 188, subdivision (a)(3) (section 188(a)(3)): " 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Gentile*, *supra*, 10 Cal.5th at pp. 842–843.)

Additionally, Senate Bill 1437 added section 1170.95 (later renumbered section 1172.6), which "provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*); Stats. 2022, ch. 58, § 10.) Under the statute, "an offender must file a petition in the sentencing court averring that:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (*Lewis*, at pp. 959–960.)  When a petition complies with these three

9

requirements, the court must determine whether the petitioner has made a prima facie showing for relief.  (*Id.* at p. 960.)

Where, as here, a prima facie showing for relief has been made, "the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.'  [Citation.] 'The prosecutor and the petitioner *may rely on the record of conviction* or offer new or additional evidence to meet their respective burdens.'  [Citation.]  At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'" (*Lewis*, *supra*, 11 Cal.5th at p. 960, italics added; see § 1172.6, subds. (c), (d)(1) & (3).)  "If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner."  (§ 1172.6(d)(2).)

## B.  Prior Finding

Burks first contends he was entitled to vacatur of his murder conviction under section 1172.6(d)(2), without an evidentiary hearing, because the trial court previously granted his section 995 motion to set aside the gang-murder and felony-murder special circumstances after finding the prosecution presented insufficient evidence that he acted with intent to kill or with reckless indifference to human life.  Whether or not a section 995 determination falls within the scope of section 1172.6 is a matter of statutory interpretation, which we review de novo.  (*Lewis*, *supra*, 11 Cal.5th at p. 961.)

*People v. Nieber* (2022) 82 Cal.App.5th 458 (*Nieber*) recently considered "what type of 'prior finding by a court' " falls within the contemplation of section 1172.6(d)(2). (*Nieber*, at p. 470.) According to *Nieber*, case law "suggest[s] a defendant is eligible for resentencing under section 1172.6, subdivision (d)(2) if the defendant is acquitted of special circumstance allegations. The acquittal can be the result of an appellate court's factual findings in response to a habeas corpus petition [citation], a court or jury's not-true finding of a special circumstances allegation [citations], or the dismissal of a special allegation after the evidence is submitted to the jury when there is not sufficient evidence to support the charge [citation]. *Thus, the type of 'prior finding by a court' must, like a ' "prior finding by a . . . jury" ' be the type of finding that challenges whether the People have demonstrated guilt beyond a reasonable doubt.*" (*Id.* at p. 473, italics added.) Burks argues *Nieber* was wrongly decided, but we agree with *Nieber's* interpretation of the statute.

Starting with the language of section 1172.6(d)(2), we see it requires "a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony." On its face, this language requires a merits-type determination of the type "either a court or jury could make" that the major participant and reckless indifference elements were not proved beyond a reasonable doubt. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 440 (*Harrison*).)

The overall structure of the statute supports this interpretation. Section 1172.6(d)(3) contemplates that courts will hold an evidentiary hearing to determine whether the petitioner could be convicted of murder under the 2019 amendments to sections 188 and 189, while section 1172.6(d)(2) indicates that such a hearing may be obviated in two situations:

(1) where the parties agree to waive a hearing and stipulate the petitioner is eligible to have his or her murder conviction vacated and for resentencing; or (2) where there already has been "a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony." (See *People v. Ramirez* (2019) 41 Cal.App.5th 923, 932 (*Ramirez*).) Where there is no such stipulation or prior finding, the statute calls for a hearing in which the prosecution may present evidence to prove, beyond a reasonable doubt, that the petitioner is guilty of murder under the amendments to sections 188 and 189. (§ 1172.6(d)(3).) After considering such evidence, the court must make a merits-type determination whether the prosecution has met its burden of proof. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) If the court finds the prosecution has not met its burden, then the petitioner is entitled to relief.

Beyond the plain language and structure of the statute, the purpose of Senate Bill 1437—which added section 1170.95 to the Penal Code—supports this interpretation. (Stats. 2018, ch. 1015, § 4.) In an uncodified section, Senate Bill 1437 declared it "necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).) This purpose is promoted by interpreting section 1172.6(d)(2) as requiring a finding that the available evidence does not support a murder charge beyond a reasonable doubt.

Moreover, we agree with *Nieber*, *supra*, 82 Cal.App.5th 458, that case law supports the conclusion reached here. (See, e.g., *Harrison*, *supra*, 73 Cal.App.5th at pp. 435, 438–440 [section 1172.6(d)(2) relief mandated where

12

trial court found the evidence at bench trial did not establish beyond a reasonable doubt that the defendant acted with reckless indifference to life]; *People v. Clayton* (2021) 66 Cal.App.5th 145, 154–158 [relief mandated where jury found the evidence did not prove beyond a reasonable doubt that petitioner was either an aider and abettor who acted with the intent to kill or a major participant who acted with reckless indifference]; *Ramirez*, *supra*, 41 Cal.App.5th at pp. 926–927, 933 [relief mandated where appellate court determined in a habeas proceeding that substantial evidence did not prove beyond a reasonable doubt that petitioner was a major participant who acted with reckless indifference].)

We turn to consider whether a court's decision to set aside a special circumstance allegation pursuant to section 995 is the type of finding contemplated by section 1172.6. We conclude it is not; rather, it is a decision of limited scope about the sufficiency of the evidence presented at the preliminary examination.

Before an information can be filed, there must be a preliminary examination. (§ 738.) "The purpose of the preliminary hearing before a committing magistrate is to determine whether there is sufficient or probable cause to believe the defendant guilty of a public offense." (*Walker v. Superior Court* (1980) 107 Cal.App.3d 884, 888.) After a preliminary examination, the prosecutor may charge the defendant by information with any offense shown by the evidence taken at the preliminary examination. (§ 739; see § 1009.)

Section 995 provides a mechanism for challenging counts, enhancements, and special circumstance allegations in an information. (*People v. Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, 761 & fn. 6.) Section 995 permits a defendant charged by information to move for dismissal of a special circumstance "on the ground that it was not supported

13

by a finding of reasonable or probable cause at the preliminary hearing." (*Griffith v. Superior Court* (2011) 196 Cal.App.4th 943, 949; § 995, subd. (a)(2)(B).)  The purpose and scope of a section 995 review is limited to reviewing "the sufficiency of the . . . information on the basis of the record made before . . . the magistrate at the preliminary hearing . . . .  A section 995 motion does not contemplate the introduction of evidence at the hearing on the motion."  (*People v. Crudgington* (1979) 88 Cal.App.3d 295, 299.)  As Burks acknowledges, the probable cause standard applicable to section 995 determines whether a prosecution will proceed; this is distinct from the standard of proof beyond a reasonable doubt that a court or jury must apply when rendering a verdict on alleged charges.  (*People v. Uhlemann* (1973) 9 Cal.3d 662, 666–667 (*Uhlemann*).)  Moreover, section 995 findings are not "final" findings that bar future prosecutions.  (*Nieber*, *supra*, 82 Cal.App.5th at p. 475.)

Considering its limited purpose and scope, a decision on a section 995 motion does not amount to a "prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony" within the contemplation of section 1172.6(d)(2).  And in this case, the trial court's decision to dismiss the special circumstance allegations under section 995 did not stray from the limited purpose and scope of a section 995 review.  When addressing Burks's motion to set aside the special circumstance allegations under section 995, the court considered *only* the preliminary hearing transcript and *only* whether the evidence reflected in that transcript was sufficient to support a "holding order" on the special circumstance allegations.

Burks appears to argue that a dismissal of charges or allegations at a preliminary hearing may become a final finding and thereby "bar future

14

prosecution if the state does not timely contest them." He cites to *Lucido v. Superior Court* (1990) 51 Cal.3d 335, in which the California Supreme Court applied the doctrine of collateral estoppel to bar a prosecution for indecent exposure after the People failed to appeal the lower court's finding that insufficient evidence of that charge had been presented at a probation revocation hearing. (*Lucido*, at pp. 339–342.) But whether an unchallenged dismissal under section 995 might operate as a collateral estoppel bar—a point we discuss and reject below—*Lucido* has no bearing on the proper interpretation of the meaning of a "finding" under section 1172.6(d)(2).

### C. Collateral Estoppel

Relatedly, Burks argues the doctrine of collateral estoppel bars relitigation of the court's finding under section 995 that the evidence at the preliminary hearing was insufficient to support the special circumstance allegations. We reject this.

"Collateral estoppel prohibits relitigation of issues argued and decided on their merits in prior proceedings. [Citation.] The doctrine traditionally applies when four requirements are met: ' "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." ' " (*Nieber*, *supra*, 82 Cal.App.5th at p. 475.)

The same argument Burks makes here was raised and rejected in *Nieber*, which explained that " ' "the doctrines of res judicata or collateral estoppel are inapplicable to orders dismissing criminal proceedings following

15

preliminary hearings." ' " (*Nieber*, *supra*, 82 Cal.App.5th at p. 475, citing *People v. Wallace* (2004) 33 Cal.4th 738, 749 (*Wallace*) and *Uhlemann*, *supra*, 9 Cal.3d at pp. 667–668.) *Nieber* went on: "As we previously explained, the magistrate's findings following a preliminary hearing are not final. 'When a magistrate declines to hold a defendant to answer on the ground that the evidence at the preliminary hearing did not establish probable cause to believe the defendant committed the charged offense, the ruling does not bar future prosecution. [Citation.]' (*Wallace*, at p. 749.) 'The prosecution may file another complaint charging the same offense or may file an information charging the same offense in the trial court.' " (*Nieber*, at p. 475.)

Moreover, as indicated, *ante*, a preliminary hearing is a proceeding of a limited nature, not a trial. (*Uhlemann*, *supra*, 9 Cal.3d at p. 667 & fn. 3.) At a preliminary hearing, a magistrate performs the limited function of determining whether there is probable cause to believe a defendant committed a charged offense, but "[t]he magistrate lacks authority to determine the guilt or innocence of the defendant." (*Wallace*, *supra*, 33 Cal.4th at p. 749.) In this case, the finding rendered under section 995 was that the prosecution's evidence at the preliminary hearing did not establish probable cause to believe the special circumstance allegations applied. That is not equivalent to a finding by a court that the evidence presented at a section 1172.6(d)(3) hearing does not establish beyond a reasonable doubt that a defendant committed murder under the 2019 amendments to section 188 and 189. (*Uhlemann*, *supra*, 9 Cal.3d at p. 667.)

In sum, we reject Burks's argument that the doctrine of collateral estoppel applies here.

**D. Sufficiency of Evidence**

Burks contends the order denying his petition was unsupported by substantial evidence that he was a major participant in the robbery who acted with reckless indifference to human life. In the course of making this claim, Burks sets out several arguments about the proper standard of review, one of which appears to merit a remand.

As the People point out, case law has repeatedly applied the substantial evidence standard to review a trial court's determination at a section 1172.6(d)(3) hearing. (See, e.g., *Clements*, *supra*, 75 Cal.App.5th at p. 298; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591 (*Mitchell*); *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232–233 (*Sifuentes*); *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) Under that familiar standard, we " ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Clements*, *supra*, 75 Cal.App.5th at p. 298.)

Burks, however, sets out several arguments why we should independently review the denial of his petition. First, relying on *People v. Vivar* (2021) 11 Cal.5th 510, he contends we should review the denial of his petition independently because the trial court's determination was based

17

solely on the "cold record."  But several cases have already rejected this argument.  (*Sifuentes*, *supra*, 83 Cal.App.5th at pp. 232–233; *Mitchell*, *supra*, 81 Cal.App.5th at p. 591; *Clements*, *supra*, 75 Cal.App.5th at p. 302.)  In doing so, these cases relied on *People v. Perez* (2018) 4 Cal.5th 1055  and distinguished *Vivar*.  (*Clements*, at p. 302; *Sifuentes*, at pp. 232–233.)  We agree with the reasoning in these cases and reject Burks's reliance on *Vivar*. The question whether Burks was a major participant who acted with reckless indifference to human life is predominantly a factual determination that we will review for substantial evidence.

Burks next contends we should review the denial of his petition independently because the trial court refused to consider his youth as a relevant factor in assessing whether he acted with reckless indifference.  He also contends the independent standard of review should apply because the court considered evidence—i.e., the statement of facts in this court's prior appellate opinion, as well as the police and probation reports—that would have been inadmissible under a statutory amendment that took effect after the court denied his petition. (Stats. 2021, ch. 551, § 1, subd. (d).)

The People concede the trial court should have considered Burks's youth as a factor in making its determination, but contend the proper remedy is not application of the independent standard of review but a remand for reconsideration.  The People indicate that Burks can raise his evidentiary objections on remand.  We agree with the People.

"[A] defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life."  (*Moore*, *supra*, 68 Cal.App.5th at p. 454.)  Here, however, the trial court indicated it would not accommodate Burks's request to consider his age when analyzing whether he acted with reckless indifference.  Under these circumstances, remand for

18

reconsideration is the appropriate remedy. (*Jones*, *supra*, 86 Cal.App.5th at pp. 1079, 1091–1092 [remanding where denial of section 1170.95 petition occurred before *Moore*, and record did not clearly show that trial court considered the petitioner's youth]; cf. *In re Chunn* (2022) 86 Cal.App.5th 639, 667 [remanding for reconsideration in light of recent statutory changes].) Burks cites no authority indicating to the contrary.

In sum, we remand to the trial court for consideration of all relevant factors, including Burks's youth, in determining whether he acted with reckless indifference to human life. In so doing, we recognize that Burks was 21 years old at the time of the murder and that, as the trial court's decision set out in detail, the record appears replete with evidence that Burks was a major participant in the robbery who acted with reckless indifference for human life. Nonetheless, the court should have considered Burks's youth as part of the totality of the circumstances. In this regard, we express no opinion on how the court should rule. In light of our remand, we need not and do not decide any other outstanding issues presented in this appeal.

## DISPOSITION

The order denying appellant's section 1170.95 petition is vacated and we remand the matter to the trial court for reconsideration consistent with this opinion.

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Rodríguez, J.


*People v. Burks* (A163740)